J. S31041/17

2017 PA Super 188

| | | |
|---|---|---|
| IN RE: D.L.B., MINOR CHILD | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: T.L.S. | : | No. 186 WDA 2017 |

Appeal from the Order, January 11, 2017,
in the Court of Common Pleas of Blair County
Orphans' Court Division at No. 2016 AD 51

BEFORE: PANELLA, J., DUBOW, J., AND FORD ELLIOTT, P.J.E.

OPINION BY FORD ELLIOTT, P.J.E.:                              **FILED JUNE 15, 2017**

T.L.S. ("Father") appeals from the January 11, 2017 order granting the petition of the Blair County Office of Children, Youth and Families ("CYF") to involuntarily terminate his parental rights to his minor female child, D.L.B. ("Child"), pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), and (b). After careful review, we affirm.

The relevant facts and procedural history of this case may be summarized as follows. Child was born in May 2016 to Father and S.R.B. ("Mother")[1] and was placed in foster care six days after being discharged from the hospital after birth. At the time of her birth, Child exhibited symptoms of prenatal drug use by Mother that resulted in Child being placed on medical morphine. (Notes of testimony, 5/17/16 at 11-15.) CYF

---

[1] The record reflects that Mother had a long-standing history of drug abuse and mental health issues and died on October 24, 2016, while she was incarcerated in the Blair County Prison.

previously took custody of Mother and Father's older daughter and Child's sister, W.R.B., who was born in February 2012 and was adjudicated dependent on June 30, 2015.[2]

On May 17, 2016, the trial court conducted an adjudication hearing with respect to Child. The record reflects that Father was incarcerated at the time of this hearing and did not express a desire to be a permanent resource for Child. (**See** notes of testimony, 5/17/16 at 27-28; Order of Adjudication and Dependency, 5/23/16 at 2, ¶ 1.) At the conclusion of this hearing, the trial court specifically directed Father to comply with all terms and conditions of his parole; to refrain from the use or possession of controlled substances; and to attain and maintain stable housing and employment. (**See** Order of Adjudication and Dependency, 5/23/16 at 5-6, ¶ 17.) Neither parent appealed the trial court's May 23, 2016 adjudicatory order.

Father was subsequently released from prison on June 20, 2016, and has been minimally involved in Child's life since that time. The record reflects that Father attended supervised visits with Child until September 3, 2016, but often showed up late and demonstrated poor parenting skills. (Notes of testimony, 9/1/16 at 19-20, 29.) Since her discharge from the hospital, Child has resided in the same foster home as W.R.B., and her

---

[2] On January 27, 2017, a panel of this court affirmed the involuntary termination of Father's parental rights to W.R.B., pursuant to 23 Pa.C.S.A. §§ 2511(a)(2) and (b), and dismissed Mother's appeal as moot. **See In Re: W.R.B.**, ___ A.3d ___, 2017 WL 384121 (Pa.Super. January 27, 2017) (unpublished memorandum).

foster parents serve as adoptive resources for both girls. (Permanency Review Order, 12/21/16 at 6, ¶ 23b; Permanency Review Order, 12/21/16 at 2, ¶ 4a.)

On September 1, 2016, the trial court conducted a fourth-month permanency review hearing and made the following findings of fact with respect to Father:

> [F]ather has failed to report to the Cambria County Parole & Probation Office since his release from incarceration on 6/20/16. He has not responded to messages left by his parole officer, Shawn Leahey, nor was Officer Leahey able to find [F]ather at his approved residence. Thus, [F]ather is in violation of the terms of his parole and is at risk of being detained. It does not appear that [F]ather is engaging in his treatment at the Open Door[ drug and alcohol counseling], as he has been directed. If [F]ather is detained, he could potentially remain incarcerated up to his maximum date (an additional 30 months). [F]ather did cooperate with the paternity testing, which established that he is the biological father of D.L.B. [F]ather has attended supervised visits (usually showing up late) but demonstrates a lack of basic parenting skills. [F]ather was drug screened on 8/18/16 (testing positive for Suboxone, for which he does not have a prescription) and on 8/20/16 (testing positive for THC). It is also worth noting that [F]ather appeared for our 9/1/16 hearing, but when advised that his parole officer would be participating by telephone, [F]ather left the courtroom and did not return.

Permanency Review Order, 9/6/16 at 2, ¶ 3b. The trial court subsequently terminated Father's visits with Child on September 1, 2016. (*Id.* at 8, ¶ 28.)

Thereafter, on December 9, 2016, CYF filed a petition to involuntarily terminate Father's parental rights to Child. On December 14, 2016, Father was found to have violated the terms of parole and was re-incarcerated with a maximum release date of September 10, 2018. (Notes of testimony, 12/20/16 at 8, 10-11; Permanency Review Order, 12/21/16 at 1-2, ¶ 3b.) On December 20, 2016, the trial court conducted a seventh-month permanency review hearing and made the following additional findings with respect to Father:

> [F]ather is not actively involved in any drug and alcohol treatment, nor mental health counseling. He needs to complete 100 hours of community service as part of his conditions of parole. He has not maintained any contact with his children, [CYF] or any service provider. While he was out on parole, [CYF] had great difficulty in contacting him. The last time [F]ather initiated contact with the Agency was in mid-March[] 2016.

Permanency Review Order, 12/21/16 at 2, ¶ 3b.

On January 11, 2017, the trial court conducted a termination hearing with respect to Child. During this hearing, the trial court granted CYF's request to incorporate the testimony from the aforementioned dependency proceedings for Child and W.R.B. into the record. (Notes of testimony, 1/11/17 at 5-6.) That same day, the trial court entered an order involuntarily terminating Father's parental rights to Child, pursuant to Sections 2511(a)(1), (2), (5), and (b). On January 24, 2017, Father filed a timely notice of appeal to this court. That same day, Father filed a concise

statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(b).

On February 21, 2017, the trial court filed its Rule 1925(a) opinion.

On appeal, Father raises the following issues for our review:

I. WHETHER THE EVIDENCE WAS SUFFICIENT TO SUPPORT TERMINATION ON GROUNDS OF ABANDONMENT?

II. WHETHER THE EVIDENCE WAS SUFFICIENT TO SUPPORT TERMINATION ON GROUNDS OF INCAPACITY?

III. WHETHER 23 PA.C.S.A. § 2511(A)(5) APPLIES TO A PARENT WHO WAS INCARCERATED AT THE TIME OF REMOVAL OF HIS CHILD?

Father's brief at 5.

In matters involving involuntary termination of parental rights, our standard of review is as follows:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. [A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013) (citations and internal quotation marks omitted). "The trial court is free to believe all, part, or none of the

evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation omitted). "[I]f competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa.Super. 2003) (citation omitted).

The termination of parental rights is guided by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted). We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear

conviction, without hesitance, of the truth of the precise facts in issue."

***In re C.S.***, 761 A.2d 1197, 1201 (Pa.Super. 2000) (***en banc***) (citation and quotation marks omitted).

In this case, the trial court terminated Father's parental rights pursuant to Sections 2511(a)(1), (2), (5), and (b), which provide as follows:

> **§ 2511.  Grounds for involuntary termination**
>
> **(a)  General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> (1)  The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> (2)  The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . . .
>
> (5)  The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions

which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

. . . .

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (b). We need only agree with the trial court as to any one subsection of Section 2511(a), in addition to Section 2511(b), to affirm an order terminating parental rights. *In re M.M.*, 106 A.3d 114, 117 (Pa.Super. 2014).

Instantly, we analyze the trial court's decision to terminate under Section 2511(a)(2) and (b).

> In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.
>
> The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1216 (Pa.Super. 2015) (citations, internal quotation marks, and indentation omitted).

Here, we find that there was ample evidence to justify the trial court's termination of Father's parental rights to Child, pursuant to Section 2511(a)(2). As discussed, Child has been in a pre-adoptive foster home for the duration of her life, and Father has never had custody of Child. But for a few supervised visits, Father has had virtually no contact or involvement in Child's life. Father has a lengthy criminal history and at the time of Child's birth was incarcerated until his release in June 2016. The record further reflects that Father has consistently violated the terms of his parole, which ultimately resulted in his re-incarceration less than one month prior to the termination hearing, with a maximum release date of September 10, 2018. There is also very little evidence that Father attempted to establish a parental relationship with Child while incarcerated;

Father did not contact CYF to inquire about Child and never sent any letters or gifts to Child.

The evidence further establishes that "incapacity" under Section 2511(a)(2) exists given that Father has failed to demonstrate a concrete desire or ability to remedy the problems that led to Child's placement. Father has failed to cooperate with the services provided by CYF, did not actively participate in drug or alcohol treatment, and did not complete mental health counseling. Moreover, Father failed to establish any stability in his life with regard to housing or employment. Based on the foregoing, we agree with the trial court that there exists competent evidence of record to justify the termination of Father's parental rights to Child pursuant to Section 2511(a)(2).

Next, we consider whether termination was proper under Section 2511(b). With regard to Section 2511(b), our supreme court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.[A.] § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include [i]ntangibles such as love, comfort, security, and stability. . . . [T]his Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. However, as discussed below,

> evaluation of a child's bonds is not always an easy task.

**In re T.S.M.**, 71 A.3d at 267 (internal case citations omitted). "[I]n cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case." **In re Adoption of J.M.**, 991 A.2d 321, 324 (Pa.Super. 2010) (citations omitted). Additionally, when evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation." **In re Z.P.**, 994 A.2d 1108, 1121 (Pa.Super. 2010) (citations omitted).

In concluding that the termination of Father's parental rights best served the needs and welfare of Child, the trial court emphasized that it was clearly in Child's best interest to move forward with her adoption by her foster parents. The trial court noted that Child has resided alongside her sister in a pre-adoptive foster home since shortly after her birth and that "[her] needs are being met" and that she is "loved and cared for" by her foster parents. (Trial court 1925(a) opinion, 2/21/17 at 13-14.) Lesa Ramper, a caseworker for CYF who has been involved with this case since shortly before Child's birth, testified at the termination hearing that Child seemed very comfortable in the pre-adoptive home and that Child's foster parents were very attentive to her and a viable adoptive resource.

(Notes of testimony, 1/11/17 at 6, 8-9.)  Additionally, Child's foster mother testified that Child was doing very well developmentally; was "cognitively, physically, [and] developmentally on track for her age[;]" and that W.R.B. was very nurturing with Child and enjoyed helping with her sister.  (Notes of testimony, 12/20/16 at 35-36.)  Child's foster mother further confirmed that she and her husband were an adoptive resource for both Child and W.R.B. (*Id.* at 39-40.)

This court has long recognized that "[a] child's life, happiness and vitality simply cannot be put on hold until the parent finds it convenient to perform parental duties."  *In the Matter of the Adoption of A.M.B.*, 812 A.2d 659, 675 (Pa.Super. 2002).  Our standard of review requires us to accept the trial court's findings of fact and credibility determinations where, as here, they are supported by the record.  *See In re T.S.M.*, 71 A.3d at 267.  Accordingly, we decline to reweigh the evidence and reassess witness credibility.

As a final matter, Father, in his reply brief, cites to our supreme court's recent decision in *In re L.B.M.*, 2017 Pa. LEXIS 680 (Pa. March 28, 2017), wherein the court held that 23 Pa.C.S.A § 2313(a) requires the trial court to appoint counsel for a child in a termination of parental rights ("TPR") case, and that the failure to do so is structural and can never be harmless.  (*See* Father's reply brief at 1-2.)  Father posits that the guardian *ad litem* ("GAL") in this case, Attorney Tyler Rowles, at all times

represented Child as GAL and not as appointed counsel. In response to Father's reply brief, CYF filed a motion to strike Father's reply brief on April 27, 2017.

As a point of information, Justice Wecht's opinion in **L.B.M** states that the trial court is required to appoint a separate, independent attorney to represent a child's legal interests even when the child's GAL, who is appointed to represent the child's best interests, is an attorney. Justice Wecht would hold that the interests are distinct and require separate representation. While Justice Wecht, joined by Justices Donohue and Dougherty, sought to so hold, four members of the court, Chief Justice Saylor and Justices Baer, Todd, and Mundy disagreed in different concurring and dissenting opinions with that part of the lead opinion's holding. Specifically, while the other justices agreed that the appointment of counsel for the child is required in all TPR cases and that the failure to do so by the trial court is a structural error, they did not join that part of Justice Wecht's opinion which sought to hold that the GAL may never serve as counsel for the child. Rather, such separate representation would be required only if the child's best interests and legal interests were somehow in conflict. As our decision discusses, Child's best interests and legal interests were unquestionably well represented by Attorney Rowles in this case and such interests were never in conflict. Accordingly, we decline Father's request to

remand this case for the appointment of additional counsel for Child. CYF's motion to strike Father's reply brief, in turn, is denied as moot.

Based on the foregoing, we conclude that the trial court did not abuse its discretion by involuntarily terminating Father's parental rights to Child pursuant to Section 2511(a)(2) and (b). Accordingly, we affirm the January 11, 2017 order of the trial court.

Order affirmed. Motion to strike Father's reply brief denied as moot.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/15/2017