J-S48017-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: M.A.R., A MINOR | : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: A.C.R., FATHER | : | No. 570 MDA 2017 |

Appeal from the Decree February 28, 2017
In the Court of Common Pleas of York County
Orphans' Court at No: 2016-0142

| | | |
|---|---|---|
| IN THE INTEREST OF: M.A.R., A MINOR | : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: A.C.R., FATHER | : | No. 574 MDA 2017 |

Appeal from the Order Entered March 1, 2017
In the Court of Common Pleas of York County
Juvenile Division at No: CP-67-DP-0000095-2015

BEFORE: OTT, STABILE, and PLATT[*], JJ.

MEMORANDUM BY STABILE, J.: **FILED SEPTEMBER 18, 2017**

A.C.R. ("Father") appeals from the decree entered February 28, 2017, in the Court of Common Pleas of York County, which involuntarily terminated his parental rights to his minor son, M.A.R. ("Child"), born in November

_____

[*] Retired Senior Judge assigned to the Superior Court.

2012.[1]  In addition, Father appeals from the order entered March 1, 2017, which changed Child's permanency goal from reunification to adoption.  After careful review, we affirm.

On May 11, 2015, the York County Office of Children, Youth and Families ("CYF") filed an application for emergency protective custody of Child.  In its application, CYF averred that officers from the York City Police Department discovered Mother unconscious on a porch in the middle of the night, and that she appeared to be intoxicated.  Application for Emergency Protective Custody, 5/11/15, at 3-4.  The officers also discovered Child, who was left unsupervised in his stroller.  *Id.* at 4.  CYF averred that Father was not available to care for Child at that time, due to his incarceration.  *Id.*  Specifically, Father was incarcerated due to a parole violation, as well as charges of public drunkenness, disorderly conduct, and resisting arrest.  *Id.*  The trial court granted CYF's application, and entered an order of emergency protective custody.  Child remained in the custody of CYF pursuant to a shelter care order entered May 15, 2015, and the court adjudicated Child dependent on May 26, 2015.

On November 15, 2016, CYF filed a petition to involuntarily terminate Father's parental rights to Child, as well as a petition to change Child's

_____

[1] The decree also terminated the parental rights of T.R. ("Mother").  Mother did not file a brief in connection with this appeal, nor did she file her own separate appeal.

permanency goal from reunification to adoption. The trial court conducted a combined termination and goal change hearing on January 17, 2017. Following the hearing, on February 28, 2017, the court entered a decree terminating Father's parental rights. The court entered an order changing Child's permanency goal from reunification to adoption on March 1, 2017.[2] Father timely filed notices of appeal on March 30, 2017, along with concise statements of errors complained of on appeal.

Father now raises the follows issues for our review.

I. Did the trial court err in granting a contested involuntary termination of parental rights without appointing legal counsel to represent the proposed adoptee?

II. Did the trial court err in changing the goal of a juvenile dependency proceeding from family reunification to adoption where the child was not removed from the care of the father, where he had not had the opportunity to work with services, and where he was about to be released from incarceration?

Father's Brief at 5 (suggested answers and unnecessary capitalization omitted).

In his first issue, Father challenges the decree terminating his parental rights to Child. Our standard of review is well-settled.

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law

---

[2] The order also established a concurrent goal of placement with a legal custodian.

or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

In his brief on appeal, Father makes no effort to challenge the evidence supporting the trial court's termination decree. Instead, Father focuses entirely on the court's failure to appoint legal counsel for Child pursuant to our Supreme Court's recent holding in *In Re Adoption of L.B.M.*, 2017 Pa. LEXIS 1150 (corrected opinions filed May 23, 2017). In *L.B.M.*, the Court held that trial courts must appoint counsel to represent the legal interests of any child involved in a contested involuntarily termination proceeding pursuant to 23 Pa.C.S.A. § 2313(a).[3] The Court

_____

[3] Section 2313(a) provides as follows.

> **(a) Child.--**The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents. The court may appoint counsel or a guardian ad litem to represent any child who has not reached the age of 18 years and is subject to any other proceeding under this part whenever it is in the best interests of the child. No attorney or law firm shall represent both the child and the adopting parent or parents.

23 Pa.C.S.A. § 2313(a).

explained that a child's legal interests are distinct from his or her best interests, in that a child's legal interests are synonymous with the child's preferred outcome, while a child's best interests must be determined by the court. *Id.* at *2-3. While Father concedes that Child was represented by his dependency guardian *ad litem* ("GAL") during the termination and goal change hearing, Father insists that representation by a dependency GAL does not comply with Section 2313(a). Father's Brief at 8.

Father is mistaken in his interpretation of *L.B.M.* This Court has explained that case's holding as follows.

> As a point of information, Justice Wecht's opinion in *L.B.M* states that the trial court is required to appoint a separate, independent attorney to represent a child's legal interests even when the child's GAL, who is appointed to represent the child's best interests, is an attorney. Justice Wecht would hold that the interests are distinct and require separate representation. While Justice Wecht, joined by Justices Donohue and Dougherty, sought to so hold, four members of the court, Chief Justice Saylor and Justices Baer, Todd, and Mundy disagreed in different concurring and dissenting opinions with that part of the lead opinion's holding. Specifically, while the other justices agreed that the appointment of counsel for the child is required in all TPR cases and that the failure to do so by the trial court is a structural error, they did not join that part of Justice Wecht's opinion which sought to hold that the GAL may never serve as counsel for the child. Rather, such separate representation would be required only if the child's best interests and legal interests were somehow in conflict. . . .

*In re D.L.B.*, 2017 Pa. Super. LEXIS 436 at *14-15 (filed June 15, 2017).

In this case, we discern no conflict between Child's best interests and legal interests. With respect to Child's best interests, Child was represented during the termination and goal change hearing by Edna Moore, Esquire,

- 5 -

who appeared on behalf of Child's GAL, Marc Semke, Esquire. Attorney Moore reported that Attorney Semke supported the termination of Father's parental rights. N.T., 1/17/2017, at 54.

With respect to Child's legal interests, our review of the record does not reveal that the GAL's position differed from Child's preferred outcome. Child was just over four years old at the time of the termination hearing, and it is clear that he was too young to provide any input on whether Father's parental rights should be terminated. Moreover, as discussed in greater detail below, the record indicates that Child is bonded with his pre-adoptive foster mother, C.C. *Id.* at 35. Child's relationship with Father is minimal, as they have had no direct contact since at least October 2014, when Child was less than two years old. *Id.* at 33, 59. Thus, we conclude that Attorneys Moore and Semke represented both Child's best interests and legal interests, and that this dual role did not run afoul of *L.B.M.*

We next consider the second issue presented in Father's brief, in which he challenges the order changing Child's permanency goal from reunification to adoption. This Court employs the following standard of review when considering an appeal from a goal change order.

> [T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010).

> Pursuant to [42 Pa.C.S.A.] § 6351(f) of the Juvenile Act, when considering a petition for a goal change for a dependent child, the juvenile court is to consider, *inter alia:* (1) the continuing necessity for and appropriateness of the placement; (2) the extent of compliance with the family service plan; (3) the extent of progress made towards alleviating the circumstances which necessitated the original placement; (4) the appropriateness and feasibility of the current placement goal for the children; (5) a likely date by which the goal for the child might be achieved; (6) the child's safety; and (7) whether the child has been in placement for at least fifteen of the last twenty-two months. The best interests of the child, and not the interests of the parent, must guide the trial court. As this Court has held, a child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting.

*In re A.B.*, 19 A.3d 1084, 1088-89 (Pa. Super. 2011) (citations and quotation marks omitted).

In its opinion, the trial court found that Child's best interests would be served by changing his permanency goal from reunification to adoption. The court found that Father's incarceration prevented him from having direct contact with Child throughout his dependency. Trial Court Opinion 2/28/17, at 7. Father remained incarcerated at the time of the termination and goal change hearing, and it was not clear when Father would be able to care for Child. *Id.* at 11-12. In addition, the court found that Child resides in a foster home with his two half-siblings, and that Child is strongly bonded to his half-siblings and his foster mother. *Id.* at 10.

Father argues that he parented Child successfully prior to his incarceration, and that the trial court should have granted him another opportunity to do so upon his release. Father's Brief at 9-10. Father argues

that he was unable to participate in reunification services while incarcerated, but that he maintained contact with CYF and participated in several programs provided by the prison. *Id.* at 10. Father further argues that he anticipated being paroled by March 2017, and that he would be available to care for Child within three months of his parole. *Id.*

After a thorough review of the record in this matter, we conclude that the trial court did not abuse its discretion. During the termination and goal change hearing, CYF presented the testimony of caseworker Stephanie Lynn Riddle. Ms. Riddle testified that Child has not seen Father since before his incarceration. N.T., 1/17/17, at 33. As a result, Child has had only indirect contact with Father throughout his dependency. *Id.* Ms. Riddle testified that she was assigned to this case in approximately October 2016, and that Father sent one card to Child since that time. *Id.* at 21, 43. Father also sent "two different fabrics that he had painted while he was incarcerated as gifts[.]" *Id.* at 43.

In contrast, Ms. Riddle testified that Child has lived with the same pre-adoptive foster mother, C.C., since he was placed in foster care. *Id.* at 34, 45. Child is "very bonded" to C.C., and refers to her as "mom." *Id.* at 35. Child also has a good relationship with his two half-siblings, who live in the same foster home.[4] *Id.* at 41, 51.

---

[4] Child's half-siblings are the children of Mother, but not of Father. N.T., 1/17/17, at 41.

The trial court also heard the testimony of Father. Father testified that he was incarcerated in October 2014, and that his maximum sentence will expire in December 2018. *Id.* at 59, 69. Father reported that he is eligible for parole, and that he hoped to receive a decision from the parole board within approximately two to four weeks. *Id.* at 70. Father believed that he would be released about two weeks after receiving a decision. *Id.* Father planned to reside in a halfway house for approximately a month until he is able to obtain a job and find other housing. *Id.* at 67, 75. Father estimated that he would be able to care for Child within three months of being released. *Id.* at 76.

Thus, the record supports the trial court's conclusion that changing Child's permanency goal to adoption is in Child's best interest. While Father estimated that he would be able to care for Child within several months, the court was free to reject this estimate, and to conclude that Father's ability to care for Child remained speculative. Moreover, Child has not seen Father since at least October 2014, when Child was less than two years old. Father has had only indirect contact with Child since that time, and the record contains no indication that Child has a bond with Father or even remembers who he is. In contrast, Child is bonded with his pre-adoptive foster mother, C.C., and with his half-siblings, who reside in the same foster home. It was within the court's discretion to conclude that Child's life should not be put on hold any longer. As this Court has explained in the context of involuntary termination of parental rights proceedings, "a child's life cannot be held in

abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." ***In re Adoption of R.J.S.***, 901 A.2d 502, 513 (Pa. Super. 2006).

Based on the foregoing, we conclude that the trial court did not abuse its discretion by involuntarily terminating Father's parental rights and changing Child's permanency goal to adoption. We therefore affirm the court's decree and order.

Decree affirmed. Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/18/2017