J-S82014-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: E.P.-J.C., A.A.-S.C., MINORS<br><br>APPEAL OF: M.C., NATURAL MOTHER | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br>No. 494 WDA 2017 |

Appeal from the Order Entered March 13, 2017
In the Court of Common Pleas of Lawrence County
Orphans' Court at No(s):
20040 of 2015 OC-A, No. 28 of 2012DP
20038 of 2015 OC-A, No. 27 of 2012 D

| | |
|---|---|
| IN THE INTEREST OF: E.P.-J.C., A.A.-S.C., MINORS<br><br>APPEAL OF: M.C., NATURAL MOTHER | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br>No. 495 WDA 2017 |

Appeal from the Order Entered March 13, 2017
In the Court of Common Pleas of Lawrence County
Orphans' Court at No(s):
20038 of 2015 OC-A, No. 28 of 2012, D.P.
20040 of 2015 OC-A, No. 27 of 2012 D.P.

| | |
|---|---|
| IN THE INTEREST OF: E.P.-J.C., A.A.-S.C., MINORS<br><br>APPEAL OF: M.C., NATURAL MOTHER | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br>No. 496 WDA 2017 |

Appeal from the Order Entered March 13, 2017
In the Court of Common Pleas of Lawrence County
Orphans' Court at No(s):
20038 of 2015 OC-A
20040 of 2015 OC-A
27 of 2012, D.P.
28 of 2012, D.P.

| | |
|---|---|
| IN THE INTEREST OF: E.P-.J.C., A.A.- | IN THE SUPERIOR COURT OF |

S.C., MINORS                                          PENNSYLVANIA

APPEAL OF:  M.C., NATURAL MOTHER

                                                     No. 497 WDA 2017


Appeal from the Order Entered March 13, 2017
In the Court of Common Pleas of Lawrence County
Orphans' Court at No(s):
20038 of 2015 OC-A
20040 of 2015 OC-A
27 of 2012, D.P.
28 of 2012, D.P.


BEFORE:  BENDER, P.J.E., STEVENS, P.J.E.[*], and STRASSBURGER, J.[**]

MEMORANDUM BY BENDER, P.J.E.:                **FILED MAY 11, 2018**

M.C. ("Mother") appeals from the March 13, 2017 orders that granted the petitions filed by the Lawrence County Children and Youth Services (LCCYS) to involuntarily terminate her parental rights to A.A.-S.C., born in February of 2009, and E.P.-J.C., born in February of 2010 ("Children").[1,2] We vacate and remand.

The trial court set forth an extensive factual and procedural history of this case, explaining that:

---

[*] Former Justice specially assigned to the Superior Court.
[**] Retired Senior Judge assigned to the Superior Court.

[1] L.C.'s ("Father") parental rights were also involuntarily terminated. However, he is not a party to this appeal; nor are we aware that he has filed an appeal.

[2] Mother's appeals were consolidated sua sponte by order of this Court, dated April 19, 2017.

[Children] were removed from their parents' home on April 5, 2012, because of a criminal investigation of [Mother] and [Father] based on allegations of child sexual abuse. A shelter care order was entered and [C]hildren were placed in foster care. A dependency petition was filed on April 20, 2012[,] alleging that the New Castle Police Department was investigating allegations of sexual abuse wherein the parents were listed as perpetrators. Upon the filing of a Motion to Transfer in May 2012, [C]hildren were placed in kinship care in the home of maternal aunt and uncle…. [C]hildren were adjudicated dependent by Order entered on August 16, 2012. [C]hildren remained in the [kinship care] home until LCCYS's Motion to Transfer was granted in November 2016. [C]hildren are now in foster care.

As a result of the criminal investigation, [Mother] was charged with committing various offenses involving sexual abuse committed on child victims that occurred in [Mother's] and [Father's] home. On November 6, 2014, pursuant to a plea arrangement, [Mother] entered a plea of guilty to corruption of minors (non-sexual), a first[-]degree misdemeanor, and was sentenced to three years of probation.

Trial Court Opinion (TCO), 3/13/17, at 1-2.

The trial court further discussed additional actions of Mother and Father, noting that upon Mother's objection, her probation was modified to allow her to visit with Children. Meanwhile, Father was found guilty of rape, involuntary deviate sexual intercourse, statutory sexual assault, sexual assault, and aggravated indecent assault, which resulted in a finding of aggravated circumstances and eliminated his contact with Children. Regardless of these circumstances, during the summer of 2015, both Mother and Father were not incarcerated, *i.e.*, Mother was on probation and Father was free on bail awaiting sentencing.

However, [Father] absconded. An arrest warrant was issued. As part of their efforts to locate [Father], the authorities

- 3 -

questioned [Mother] regarding her knowledge of her husband's whereabouts. [Mother] falsely told the authorities that [Father] and other individuals had come to her house, had knocked her out and raped her, and that [Father] had left and she did not know where he might be. However, upon search of the residence, the police found [Father] hiding behind a partition in the attic, and [Father] was re-arrested on July 15, 2015.

TCO at 4.[3] The court also stated:

[Mother] was charged with harboring a fugitive, hindering apprehension and related offenses. On November 19, 2015, [Mother] entered a plea of guilty to hindering apprehension, a third degree felony.

As a result of her plea and conviction o[n] the new charges, [Mother's] probation was revoked and she was re-sentenced on the charge of corruption of minors to incarceration for a minimum of 127 days and a maximum of 2 years, to be followed by 2 years of probation, with credit for time served of 127 days.

On November 19, 2015, [Mother] was sentenced on the new charge of hindering apprehension to incarceration for a minimum of 1 year and a maximum of 2 years, followed by 2 years of probation, to be served concurrently with the sentence imposed on her probation revocation. At the time of the last hearing session, [Mother] was serving her sentence in a state correctional institution but had recently appeared at a parole hearing.

*Id.*

The trial court further explained that in April of 2012, when Children were adjudicated dependent, a permanency plan was adopted. Both parents substantially complied and visits between parents and Children generally

_____

[3] In August of 2015, Father was sentenced to a term of incarceration of 16 years 9 months to 36 years, and was designated as a sexually violent predator. He has no contact with Children.

went well. However, after the new criminal charges were filed, new sentences were imposed, and Mother was transferred to a state correctional institution. At that point, Mother only had telephone contact. The court determined that,

> from her actions and testimony, and absence of expressions of condemnation and genuine remorse, it must be concluded that, despite the evidence against her husband, Mother does not consider [Father] to have committed the offenses of which he was convicted, and has not internalized the seriousness of the offenses committed against the victims or of her conviction and subsequent conduct, and does not appreciate the effect on the welfare of [Children].

*Id.* at 6. However, the court found that "a bond exists between [Children] and [Mother]." *Id.* at 7. The court also noted that "[i]t was stipulated that, if called to testify, [Children] would have stated that a strong bond exists with [Mother], and that they want to be returned to [Mother]." *Id.* The LCCYS caseworker testified that despite the stipulation, she believed termination of parental right would be in Children's best interests. Likewise, the guardian *ad litem* (GAL), who filed a brief with the trial court, "argu[ed] that the criteria for termination contained in Section 2511(a)(8) and Section 2511(b) of the Adoption Act, 23 Pa.C.S. §§ 2511(a)(8), 2511(b), have been satisfied, and that termination would best serve the needs and welfare of [Children]." *Id.*

The trial court concluded that the conditions that led to the removal and placement of Children continued to exist and that the requirements of

Section 2511(a)(8) were met. With regard to Section 2511(b), the trial court stated that:

> It is significant that a strong bond remains between [Children] and [Mother]. However, given the above findings regarding [Mother's] conduct and attitude toward the criminal conduct of, and her alignment with [Father], the further finding must be made of a substantial risk to [Children] if returned to the care of [Mother]. That substantial risk may not be disregarded. The [c]ourt agrees with the [GAL's] recommendation that the existence of a bond between [Children] and [Mother] does not outweigh the evidence of [Mother's] disregard for [Children's] welfare shown by the evidence of her conduct reported, *supra*. The record clearly warrants the conclusion that [C]hildren's developmental and emotional needs and welfare would not be served by maintenance of the parental bond.

*Id.* at 10-11. Accordingly, the court entered the orders terminating Mother's parental rights to Children.

Mother filed this timely appeal and now raises the following issues for our review:

1. Whether their [*sic*] exists competent evidence to support the trial court's finding that [M]other's parental rights should be terminated?

2. Whether the trial court erred in terminating [M]other's parental rights in light of the stipulation of a strong bond existing between [M]other and her [Children]?

3. Whether the trial court erred in finding that the termination of [M]other's parental rights was in the best interest of [Children]?

4. Whether the court erred in failing to provide legal counsel for the minor children separate from the guardian ad litem?

Mother's brief at 7.

We must first turn to Mother's fourth issue, which relates to her allegation of error that the court failed to provide legal counsel for the minor children in addition to the attorney appointed as their GAL. We initially rely on this Court's decision in **In re D.L.B.**, 166 A.3d 322 (Pa. Super. 2017), to respond. Mother points out that the order in this case was issued two weeks prior to the Supreme Court's decision in **In Re: Adoption of L.B.M.**, 161 A.3d 172 (Pa. 2017), which she claims requires "the trial court to appoint a separate, independent attorney to represent the children's legal interests in a [t]ermination of [p]arental [r]ights case, and it is error to rule that the [GAL's] involvement suffices to satisfy [23 Pa.C.S. §] 2313(a)."[4] Mother's brief at 17.

In the **D.L.B.** case, with reliance on the **L.B.M.** decision, this Court stated that "23 Pa.C.S. [] § 2313(a) requires the trial court to appoint counsel for a child in a termination of parental rights (TPR) case, and that

_____

[4] Section 2313(a) states:

> (a) **Child.**—The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents. The court may appoint counsel or a guardian ad litem to represent any child who has not reached the age of 18 years and is subject to any other proceeding under this part whenever it is in the best interests of the child. No attorney or law firm shall represent both the child and the adopting parent or parents.

23 Pa.C.S. § 2313(a).

- 7 -

the failure to do so is structural and can never be harmless." **D.L.B.**, 166

A.3d at 329.  However, the **D.L.B.** case further provides:

> As a point of information, Justice Wecht's opinion in **L.B.M.**
> states that the trial court is required to appoint a separate,
> independent attorney to represent a child's legal interests even
> when the child's GAL, who is appointed to represent the child's
> best interests, is an attorney.  Justice Wecht would hold that the
> interests are distinct and require separate representation.  While
> Justice Wecht, joined by Justices Donohue and Dougherty,
> sought to so hold, four members of the court, Chief Justice
> Saylor and Justices Bae, Todd, and Mundy disagreed in different
> concurring and dissenting opinions with that part of the lead
> opinion's holding.  Specifically, while the other justices agreed
> that the appointment of counsel for the child is required in all
> TPR cases and that the failure to do so by the trial court is a
> structural error, they did not join that part of Justice Wecht's
> opinion which sought to hold that the GAL may never serve as
> counsel for the child.  Rather, such separate representation
> would be required only if the child's best interests and legal
> interests were somehow in conflict.

**D.L.B.**, 166 A.3d at 239.

We are also aware of a very recent opinion issued by this Court,

wherein we recognized that "[t]his Court must raise the failure to appoint

statutorily-required counsel for children *sua sponte*, as children are unable

to raise the issue on their own behalf due to their minority."  **In re**

**Adoption of: T.M.L.M.**, ___ A.3d ___, 2018 PA Super 87, *2 (filed April 13,

2018) (citing **In re K.J.H.**, ___ A.3d ___, 2018 PA Super 37 (filed February

20, 2018)).  In the **T.M.L.M.** case, this Court stated that,

> effective representation of a child requires at a bare minimum,
> attempting to ascertain the client's position and advocating in a
> manner designed to effectuate that position.  It may be that [the
> c]hild wants no contact with [the m]other.  [The c]hild may be
> unable to articulate a clear position or have mixed feelings about

the matter. Furthermore, termination of [the m]other's rights may still be appropriate even if [the c]hild prefers a different outcome. However, pursuant to the Supreme Court's opinion in Section I and II-A of *L.B.M.*, it is clear that where a court appoints an attorney ostensibly as counsel, but the attorney never attempts to ascertain the client's position directly and advocates solely for the child's best interests, the child has been deprived impermissibly of his statutory right to counsel serving his legal interests. *L.B.M.*, 161 A.3d at 174, 180.

*T.M.L.M.*, 2018 PA Super at *4. Accordingly, the termination order in *T.M.L.M.* was vacated by this Court and the case was remanded for the appointment of counsel to represent the child's legal interests. In contrast, the *D.L.B.* Court found the child's best interests and legal interests were not in conflict and were represented by the attorney appointed as the child's GAL.

Here, Deborah A. Shaw, Esq., who represented Children at the termination hearing and filed a brief in conjunction with this appeal, was acting in the capacity of a GAL, and was asserting only Children's best interests. In fact, the thrust of Attorney Shaw's arguments in her brief support the court's decision to terminate Mother's parental rights. With the conflict established by this record, Attorney Shaw cannot represent Children's legal interests at the same time. This is evident in light of the stipulation entered into by the parties that Children wish to live with Mother

when she is no longer incarcerated.[5]  Having only advocated for Children's best interests and not their legal interests, Children were "deprived impermissibly of [their] statutory right to counsel serving [their] legal interests." **T.M.L.M.**, 2018 PA Super at *4.  Therefore, we are compelled to vacate the order terminating Mother's parental rights and remand for the trial court to appoint separate counsel to represent Children's legal interests. Because the record supports a finding that Children's best interests and their legal interests are in conflict, a new hearing is necessary so that counsel can advocate on Children's behalf.

Orders vacated.  Case remanded for proceedings consistent with this memorandum.  Jurisdiction relinquished.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/11/2018

_____

[5] Attorney Shaw noted in her brief that Mother's maximum date for release from prison was November 17, 2017, and that her probation ends on November 19, 2019.  **See** Attorney Shaw's brief, at 6.