J-S45032-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF L.A.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: V.O., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1143 MDA 2023 |

Appeal from the Decree Entered July 13, 2023
In the Court of Common Pleas of Cumberland County Orphans' Court at
No(s):  028-Adopt-2023

| | | |
|---|---|---|
| IN RE: ADOPTION OF A.L.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: V.O., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1144 MDA 2023 |

Appeal from the Decree Entered July 13, 2023
In the Court of Common Pleas of Cumberland County Orphans' Court at
No(s):  029-ADOPT-2023

BEFORE:   BOWES, J., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                **FILED: JANUARY 24, 2024**

Appellant, V.O. ("Mother"), appeals from the July 13, 2023 decrees filed in the Cumberland County Court of Common Pleas, which granted the petitions of A.A.B. ("Father") and A.B. ("Stepmother") (collectively, "Appellees") and involuntarily terminated her parental rights to her eight-year-old twin

_____

[*] Former Justice specially assigned to the Superior Court.

daughters, L.A.B. and A.L.B. (collectively, "the Children"), pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), and (b). After careful review, we affirm.

We glean the relevant facts and procedural history of this case from the certified record. The Children were born in August 2014. Although Mother and Father were initially married, they separated sometime in late 2018 or early 2019. *See* N.T., 7/13/2023, at 46. Contemporaneously, Appellees met, began living together, and married in 2021. *See id.* at 32. Since Stepmother started cohabiting with Father in 2019, she has been intimately involved in the care of the Children. *See id.*

The Children have been diagnosed with level three autism and developmental delays. *See id.* at 6. Father described the Children's autism as "not the most severe but it's not the easiest either." *Id.* at 6. They are "somewhat" verbal, and L.A.B. requires a tablet to help her communicate. *Id.* Father stated that "[i]f you ask them, do you love [me], they will say, yes, I love you. They say the small stuff. But if you ask them where [] they wanted to go or what they wanted to do, no." *Id.* at 6-7. Due to their diagnoses, the Children attend "New Story," a specialized school where the Children receive speech therapy, behavioral therapy, and physical therapy to meet their individual needs throughout the full twelve months of each year. *See id.* at 7, 12-14. Father emphasized that the Children "need a lot of consistency. [T]hey have a routine they do every day and it helps. If you take a wrong road going to school it throws their whole day off." *Id.* at 13-14.

In early 2019, CYS became involved with Mother because her oldest children, who are not implicated by these proceedings, were not attending school. *See id.* at 8-9, 47. Additionally, Father learned that the Children were behind on vaccines. *See id.* at 12. As a result, Father was awarded physical custody of the Children. *See id.* at 8-9, 47. For approximately two years thereafter, Mother only saw the Children at Father's discretion. *See id.* at 47.

In 2021, Mother initiated a custody action in the Cumberland County Court of Common Pleas. *See id.* at 14, 47. Ultimately, the most recent custody order also awarded Father sole legal custody of the Children, limited Mother to supervised custody by Father, and required Mother to submit to drug tests to participate in visits with the Children. *See id.*

Mother last physically interacted with the Children in April 2022. *See id.* at 16, 54. Following a disagreement during her final visit, Father informed Mother that he was no longer comfortable supervising the visits. *See id.* at 17. Father suggested utilizing alternative behavior consultants ("ABC") as a visitation supervisor. *See id.* Father further told Mother that he would reduce the cost of her child support by the amount it cost to use ABC to ensure that the visits would not come at an increased cost to Mother. *See id.* at 18.

However, as best we can discern, Mother never reached out to ABC to schedule visits. *See id.* at 57-58. Further, Mother did not file any further pleadings in the custody case. *See id.* at 19-20, 58-59. Accordingly, Mother's

only contact with the Children since April 2022 has been phone calls "most nights." *See id.* at 20.

On May 16, 2023, Appellees filed petitions for the involuntary termination of Mother's parental rights pursuant to Pa.C.S.A. § 2511(a)(1), (2), and (b) along with separate petitions for adoption. By separate orders, the orphans' court appointed counsel for Mother and legal interest counsel for the Children, who were eight years old at the time. On July 13, 2013, the orphans' court conducted a hearing at which all of the parties testified.

On July 13, 2023, the orphans' court issued decrees involuntarily terminating Mother's parental rights. Mother timely filed a notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The orphans' court filed a Rule 1925(a) opinion on September 26, 2023.

On appeal, Mother presents the following issues for review:

1. Did the [orphans' c]ourt err in finding that [Mother] had "by conduct continuing for a period of at least six months immediately preceding the filing of the petition . . . evidenced a settled purpose of relinquishing parental claim to a child or . . . refused or failed to perform parental duties"?

2. Did the orphans' court err in finding that [Mother's] parental rights should be terminated due to her "continued incapacity, abused, neglect or refusal" which caused the [Children] to "be without essential parental care, control or subsistence necessary for [their] physical or mental well-being"?

Mother's Brief at 3.

Our review of involuntary termination decrees "is limited to a determination of whether the decree of the termination court is supported by competent evidence." *In re Adoption of C.M.*, 255 A.3d 343, 358 (Pa. 2021). When applying this standard, appellate courts must accept the orphans' court's findings of fact and credibility determinations if they are supported by the record. *In the Interest of S.K.L.R.*, 256 A.3d 1108, 1123 (Pa. 2021). "Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion." *In re Adoption of L.A.K.*, 265 A.3d 580, 591 (Pa. 2021). An appellate court may reverse for an abuse of discretion "only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id*.

Termination of parental rights is governed by Section 2511 of the Adoption Act. If the orphans' court determines the petitioner established grounds for termination under subsection 2511(a) by clear and convincing evidence, then the court must assess the petition under subsection 2511(b), which focuses on the child's needs and welfare. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

In this case, the orphans' court terminated Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2) and (b), which provide as follows:

> **(a) General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . .

**(b) Other considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1)-(2), (b). We need only agree with the trial court as to any one subsection of Section 2511(a), in addition to Section 2511(b), to affirm an order terminating parental rights. *In re D.L.B.*, 166 A.3d 322, 327 (Pa.Super. 2017) (citing *In re M.M.*, 106 A.3d 114, 117 (Pa.Super. 2014)).

We will analyze the orphans' court's decision to terminate Mother's parental rights under Section 2511(a)(1) and (b). In order to establish grounds for termination pursuant to Section 2511(a)(1) "[a] petitioner. . . must demonstrate by competent, clear and convincing evidence, '[t]he parent by conduct continuing for a period of at least six months immediately

- 6 -

preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.'" **C.M.**, 255 A.3d at 363-64 (citation omitted) (footnote omitted).

Our Supreme Court has held that:

our courts long have interpreted parental duties in relation to the needs of a child, such as love, protection, guidance and support. Parental duties are carried out through affirmative actions that develop and maintain the parent-child relationship. The roster of such positive actions undoubtedly includes communication and association. The performance of parental duties requires that a parent exert himself to take and maintain a place of importance in the child's life.

**L.A.K.**, 265 A.3d at 592 (internal citations and quotation marks omitted). Furthermore, "[f]ortitude is required, as a parent must act with 'reasonable firmness' to overcome obstacles that stand in the way of preserving a parent-child relationship and may not wait for a more suitable time to perform parental responsibilities." **Id.** at 592 (citation omitted).

In assessing Section 2511(a)(1), the orphans' court should consider the entire history of the case and avoid applying the statutory six-month requirement mechanically. **See C.M.**, 255 A.3d at 364. However, the General Assembly's emphasis on the six months immediately preceding the filing of the termination petition indicates this timeframe is the "most critical period for evaluation" of a parent's conduct. **L.A.K.**, 265 A.3d at 592.

"[T]he question of whether a parent has failed or refused to perform parental duties must be analyzed in relation to the particular circumstances of

the case." **In re Burns**, 379 A.2d 535, 540 (Pa. 1977). Thus, "even where the evidence clearly establishes a parent has failed to perform affirmative parental duties for a period in excess of six months …, the court 'must examine the individual circumstances and any explanation offered by the parent to determine if that evidence, in light of the totality of circumstances, clearly warrants permitting the involuntary termination [of parental rights].'" **L.A.K.**, 265 A.3d at 593 (citation omitted).

The totality of the circumstances includes consideration of the following: "(1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between the parent and child, if any, including any efforts made by the parent to reestablish contact with the child; and (3) the effect that termination of parental rights would have on the child pursuant to Section 2511(b)." **Id.** As explained by our Supreme Court, "the purpose of this analysis is to give effect to our mandate that courts avoid a mechanical application of the law regarding the termination of parental rights. The law must be applied with the purpose of serving needs and welfare of each individual child in his or her particular circumstances." **Id.**

With these principles of law in mind, we turn to Mother's argument that Appellees did not present clear and convincing evidence of Section 2511(a)(1) because the record shows that she called the Children almost every night, negotiated with Father regarding a new visitation schedule, and bought gifts for the Children. Mother's Brief at 9-10. Mother claims Appellees withheld the

Children from her and did not afford her the opportunity to perform parental duties because they did not invite her to medical appointments and educational meetings regarding the Children. *See id.* at 12-14.

Mother's argument that Appellees withheld the Children from her is not supported by the certified record. Here, the record reveals that following Mother's last physical contact with the Children on April 28, 2022, Father did not feel comfortable supervising her visits. *See* N.T. at 17. Instead of merely withholding the Children, he suggested that future visitations occur through ABC. *See id.* Understanding Mother's financial difficulties, he also offered to essentially absorb any additional expenses this arrangement might entail. *See id.* Inexplicably, Mother never contacted ABC to facilitate these visits. *See id.* at 57-58. Further, Appellees continued to permit phone calls between Mother and the Children most nights. *See id.* at 20. Accordingly, Mother's argument that Appellees withheld the Children is without merit.

Mother contends that *C.M.* is controlling. In *C.M.*, our Supreme Court affirmed this Court's decision to vacate the orphans' court's order terminating the father's parental rights. *See C.M.*, 255 A.3d at 347. The Supreme Court held, *inter alia*, that the termination of the father's rights pursuant to Section 2511(a)(1) and (b) was not supported by competent evidence. *See id.* at 366. In that case, the father "two months prior to the [] filing of the termination petition, . . . initiated and actively pursued a complaint for custody" after the mother refused him contact with the child. *Id.* at 368. The father testified that

every time he attempted to contact the mother, she would either not answer, or told him that he was not the biological father of the child. *Id.* at 350.

In citing **C.M.**, Mother relies on the following excerpt: "when a custodial parent's conduct both causes the need for legal intervention and faults the noncustodial parent for failing to take legal action more swiftly, [] we are loath to require a parent's prosecution of legal proceedings as a mechanism for preserving parental rights." *Id.* at 368 (citing **Adoption of S.H.**, 383 A.2d 529, 533 (Pa. 1978) ("mere showing that [noncustodial parent] could conceivably have pursued legal action more promptly cannot justify termination")) (additional citation omitted). Mother's argument is flawed as the facts presented in the case at bar are distinct from those in **C.M.** As related *supra*, Appellees did not withhold the Children from Mother. Instead, she failed to take "affirmative actions that develop and maintain the parent-child relationship" with the Children. **L.A.K.**, 265 A.3d at 592. Therefore, we disagree with Mother that **C.M.** is applicable.

In concluding that Appellees satisfied Section 2511(a)(1), the court explained:

> At the hearing, no party disputed Mother had not had any in person visits between April 28, 2022 and the filing of the petition on May 16, 2023. Mother did not refute her failure to attend medical appointments or have any substantial level of involvement in the educational and developmental services the [Children] receive at their school. While Mother initiated a custody action in 2021, she did little to assert and preserve her custodial rights. Mother was well aware the [Children] were in the primary custody of Father and being cared for on a daily basis by Father and Stepmother. Mother had an active custody docket that had

she desired to pursue physical custody and visitation she could have filed a modification petition or a petition for contempt. Mother could have requested to be informed about the medical, educational and emotional developments of the [Children] even after she no longer had legal custody decision making authority. Mother could have scheduled visitation through ABC as requested by Father when he was no longer comfortable supervising the visitation. . . . Therefore, the court finds that the petitioner has established [that Mother] . . . failed to perform parental duties for at least six months prior to the filing of the petition.

Orphans' Court Opinion ("O.C.O."), 9/26/2023, at 9-10 (unpaginated). The record supports the orphans' court's conclusions.

As related *supra*, Mother last saw the Children in April 2022, more than one year prior to the filing of the involuntary termination petition. ***See*** N.T. at 16, 54. Father testified that after this visit Mother asked to see the Children two or three times, and each time he told her to set up the visits with ABC. ***See id.*** at 19. Yet Mother never contacted ABC to assert her visitation rights.

Despite maintaining regular contact with Mother *via* telephone, Father testified that the Children are not receptive to even conversing with Mother. ***See id.*** at 20 ("She doesn't -- [A.L.B.] doesn't talk, doesn't want to talk at all. And [L.A.B.] will talk but we -- it's getting to the point now where I have to give her candy to talk on the phone"). Additionally, Father testified that due to the Children's developmental diagnoses, they are only "somewhat" verbal and can only respond to basic questions. ***Id.*** at 6-7.

Further, although she initiated a custody action in 2021, Mother failed to file any further pleadings in the case despite not seeing the Children after April 2022. ***See id.*** at 58-59. Mother testified that she received the paperwork

to file a pleading from Dickinson College but "didn't know how to completely fill" it out. *Id.* at 59. Additionally, Father testified as follows on Mother's lack of involvement with the care of the Children:

> Q: What involvement, if any, does [Mother] have in [the Children's] care for their autism diagnosis?
>
> A: Can you clarify that question?
>
> Q: Sure. Absolutely. Did [Mother] participate in taking the [C]hildren to York in order to get them diagnosed?
>
> A: No.
>
> Q: Does she take them to the doctor's that they go to now for their care for their autism?
>
> A: No.
>
> Q: Did she do anything to get their shots back up to date after Children & Youth became involved?[1]
>
> A: No.

*Id.* at 13.

Based upon our review of the foregoing evidence, we conclude that the orphans' court did not abuse its discretion. It is undisputed that Mother failed to perform parental duties for the Children, who have significant special needs, well beyond the crucial six-month period. *See In re Z.P.*, 994 A.2d 1108, 1119 (Pa.Super. 2010) (concluding that post-abandonment contact must be steady, consistent, and contribute to the psychological health of the child).

---

[1] As related *supra*, CYS became involved with Mother because her oldest children, were not attending school. *See* N.T. at 8-9, 47.

Moreover, Mother did not file a petition to modify the existing custody order, failed to engage visitation *via* ABC, and failed to perform any parental duties for the Children. **See L.A.K.**, 265 A.3d at 592 ("Fortitude is required, as a parent must act with 'reasonable firmness' to overcome obstacles that stand in the way of preserving a parent-child relationship and may not wait for a more suitable time to perform parental responsibilities."). Accordingly, as we discern no error of law or abuse of discretion, we will not disturb the orphans' court's finding of grounds for termination pursuant to Section 2511(a)(1).[2]

While the trial court also found that termination was proper under Section 2511(b), Mother failed to raise any challenges to this conclusion either in her concise statement or in her statement of questions presented in her brief. **See** Concise Statement, 8/11/2023; Mother's Brief at 3. Thus, any argument regarding this section is waived. **See In re M.Z.T.M.W.**, 163 A.3d 462, 466 (Pa.Super. 2017) (reiterating that issues not included in a concise statement of errors complained of on appeal and statement of questions involved are waived).

Even if Mother preserved a challenge to the orphans' court's findings regarding Section 2511(b), we would affirm. Section 2511(b) affords primary

---

[2] Having found sufficient grounds for the termination of Mother's parental rights were presented under Section 2511(a)(1), it is unnecessary to review Mother's argument that termination was not warranted under Section 2511(a)(2). **See In re D.L.B.**, 166 A.3d at 327 ("[w]e need only agree with the trial court as to any one subsection of Section 2511(a), in addition to Section 2511(b), to affirm an order terminating parental rights").

consideration to the developmental, physical and emotional needs and welfare of the child. *See T.S.M.*, 620 Pa. at 628, 71 A.3d at 267. "Notably, courts should consider the matter from the child's perspective, placing [their] developmental, physical, and emotional needs and welfare above concerns for the parent." *In the Interest of K.T.*, 296 A.3d 1085, 1105 (Pa. 2023). This determination "should not be applied mechanically," but "must be made on a case-by-case basis," wherein "the court must determine each child's specific needs." *Id*. at 1106. Accordingly, there is no "exhaustive list" of factors that must be considered in this context. *Id*. at 1113 n.28.

The orphans' court issued the following findings pursuant to Section 2511(b):

> Mother has not shown she [] is able to meet the day to day needs of the [Children] nor provide them the continuity and routine they require for successful development. All of the [Children's] day to day needs for several years have been provided by [Appellees]. [Appellees] are dependable and dedicated to the promotion of the healthy development of the [Children] by meeting their needs and providing the routine and consistency that is critical to their well-being. Stepmother is an adoptive resource for the [Children] and given Mother's failure to fulfill her parental duties and provide the routine and consistency the [Children] desperately need to thrive; it is in their best interest for Mother's parental rights to be terminated.

O.C.O. at 10-11 (unpaginated).

As the certified record overwhelmingly supports the court's findings, we discern no error of law or abuse of discretion in the court's finding that termination of Mother's parental rights would best serve the Children's developmental, physical, and emotional needs and welfare.

Based on the foregoing, we affirm the decrees involuntarily terminating Mother's parental rights.

Decrees affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/24/2024