J-S20002-18

**NON-PRECEDENTIAL DECIAION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: B.G.L.S., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: J.D.S., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 71 MDA 2018 |

Appeal from the Decree entered December 15, 2017,
in the Court of Common Pleas of Schuylkill County,
Orphans' Court at No(s): A63-219A-17.

| | | |
|---|---|---|
| IN RE: S.L.M.S., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: J.D.S., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 73 MDA 2018 |

Appeal from the Decree entered December 15, 2017,
in the Court of Common Pleas of Schuylkill County,
Orphans' Court at No(s): A63-220A-17.

BEFORE:  GANTMAN, P.J., OTT, J., and KUNSELMAN, J.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED JUNE 28, 2018**

In this matter, J.D.S. ("Father") appeals the decrees terminating his

parental rights to his two daughters, five-year-old S.L.M.S. and two-year-old

B.G.L.S.[1]  Father's only appellate issue is whether the orphans' court had

---

[1] The orphans' court also terminated the parental rights of A.G. ("Mother")
who does not appeal.

jurisdiction over him because he is a "sovereign citizen," a pseudo-legal theory predicated on the concept that no state government has the authority to subject its citizens to the rule of law.[2]  After careful review, we affirm.

In its opinion issued contemporaneously with its termination decrees, the orphans' court provided the following relevant history:

> The children, [S.L.M.S.] and [B.G.L.S.], [were] born [in] July [] 2012 and May [] 2015, respectively.  The [Schuykill County Children & Youth Services] Agency has a history of working with the family that began in February of 2013, addressing parenting, drugs and alcohol issues, and domestic violence.  The [older] child, [S.L.M.S.], was in foster care placement under a protective order from December 9, 2013 until January 6, 2015, when she was returned to Mother.  At that time, Mother was not residing with Father.  Three months later, [S.L.M.S.] re-entered foster care under an emergency protective order because of Mother's drug and alcohol issues, domestic violence concerns, and Father's failure to have all visits supervised. [S.L.M.S.] has remained in foster care since April 6, 2015. [B.G.L.S.] was born [in] May [] 2015, and the Agency was

---

[2] A tenet of the sovereign citizen theory is that:

> When a person is born, that person's birthday certificate (or Social Security card application creates a corresponding legal fiction, or "strawman," in that person's name.[]  This means that every person has a kind of dual personality; there is the "flesh-and-blood" person on one hand and the fictional strawman on the other.[] … [T]hey believe that only the strawman really operates in the modern commercial world (engaging in transactions, collecting debts, and contracting with others); accordingly, they believe the government has power over the strawman only, and completely lacks authority over the flesh-and-blood person.

Joshua P. Weir, Sovereign Citizens: A Reasoned Response to the Madness, 19 Lewis & Clark L. Rev. 829 (2015).

given emergency custody of her two days later because she was born addicted to methamphetamines. […]

Father has exerted very little effort to complete the [Family Service Plan] goals in the past thirty months while his children have been in placement. […] He has established no relationship with the [younger] child who was removed immediately after her birth, and has made no effort to maintain even a minimal relationship with the older child. […]

[The children] are up to date on all of their wellness visits and are bonded to the foster parents who are interested in adopting them.

Trial Court Opinion, 12/15/17, at 1-2; 10; 13

The sole issue on appeal is, verbatim:

1. Whether the trial court properly exercised subject matter and personam jurisdiction of [Father] and his (2) real living breathing girls.

Father's Reply Brief, at 2.[3]

"Issues pertaining to jurisdiction are pure questions of law, and an appellate court's scope of review is plenary. Questions of law are subject to a *de novo* standard of review." **Commonwealth v. McGarry** 172 A.3d 60, 65-66 (Pa. Super. 2017) (*citing* **In re J.A.**, 107 A.3d 799, 813 n. 15 (Pa. Super. 2015) (citation omitted). "A subjection matter jurisdiction challenge cannot be waived." **Id.** (*citing* **Commonwealth v. Jones**, 929 A.2d 205, 210 (Pa. 2007).

---

[3] Father's Reply Brief provides the most recent, and most succinct iteration of his appellate issue. His original brief includes three issues, all of which relate to the jurisdictional challenge.

Jurisdiction relates to the court's power to hear and decide the controversy presented. The Adoption Act provides in relevant part: "the court of common pleas of each county shall exercise through the appropriate division original jurisdiction over voluntary relinquishment, involuntary termination and adoptions proceedings." 23 Pa.C.S.A. § 2301.

Father's personal iteration of the sovereign citizen theory is that the government – or at least non-federal governments – only have jurisdiction over "persons." "A 'person' is a fictional character." **See** N.T., 10/4/2017, 4. Thus, the Commonwealth (and its laws and specifically its judges) cannot infringe Father's rights. For support, he strings together various holdings from various jurisdictions, as well an assortment of statutes and entries from Black's Law Dictionary. Of some unknown significance, Father attaches the termination order to his brief with the words "Void - I do not recognize" scribbled over it in red ink at a 45 degree angle; he signs his documents with 5 cent stamps with the handmade symbols for trademark and copyright on either sides. He purposely refers to the "uNited States of America." **See** Father's Brief, at 27 (spelling original). He refers to himself in the caption as "a people;" he refers to the subject children as "living and breathing." He concludes the termination of his parental rights to his daughters was bogus.

Courts in this Commonwealth and various federal courts of appeals have rejected sovereign citizen claims. **See, e.g., United States v. Himmelreich**, 481 Fed.Appx. 39, 40 n.2 (3d. Cir. 2012) (*per curiam*) (citing with approval **United States v. Benabe**, 654 F.3d 753, 767 (7th Cir. 2011)); **Charlotte v.**

*Hansen,* 433 Fed.Appx. 660, 661 (10th Cir. 2011) ("an individual's belief that her status as a sovereign citizen puts her beyond the jurisdiction of the courts has no conceivable validity in American law.")

Naturally, there are federally protected constitutional rights implicated in a termination hearing. *See* U.S.C.A. Const. Amends. 5; 14. The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S.C.A. Const. Amend. 14. The United States Supreme Court has interpreted this clause to include a substantive component that "provides heighten protection against government interference with certain fundamental rights and liberty interests." *Troxel v. Granville*, 530 U.S. 57, 65 (2000). "Indeed, the Supreme Court had explicitly held that natural parents have a 'fundamental liberty interest … in the care, custody, and management of their child[ren]." *Santosky v. Kramer*, 455 U.S. 745, 753 (1982) (citations omitted). "[T]he interest of parents in the care, custody, and control of their children [] is perhaps the oldest of the fundamental liberty interests recognized by [the United States Supreme Court.] *Troxel,* 530 U.S., at 65. This is not to say, however, that the state may never deprive an individual of the parental right to custody. *In Interest of A.P.*, 692 A.2d 240, 242 (Pa. Super. 1997). The United States Supreme Court has recognized the states' authority to terminate a parents' constitutionally protected right to their children. *See, e.g., Santosky*, 455 U.S. 745, 748.

In terms of personal jurisdiction, there is no question the Commonwealth had jurisdiction over Father. **See** 42 Pa.C.S.A. § 5301(a) (1). Father resides and domiciles in Pennsylvania. It is unlikely any of this will convince Father, but the orphans' court had proper jurisdiction all the same.

We note that the learned President Judge William Baldwin, once made aware of Father's intention to challenge Pennsylvania's authority over him, operated with an abundance of caution. He reminded Father of his right to appointed counsel. Even though it was clear Father was unlikely to heed Judge Baldwin's advice to seek counsel, Judge Baldwin even continued the matter in the hope Father would reconsider. At the rescheduled hearing, Father chose to proceed unrepresented. Although Father contests no other aspect of the termination decision, we note further that in addition to affording the parents proper due process, Judge Baldwin issued a detailed Rule 1925(a) opinion about his substantive decision.

We note further the existence of two recent opinions issued by our Court after orphans' court's issued its termination decrees. **See In re K.J.H.**, 180 A.3d 411 (Pa Super. Feb. 20, 2018); **see also In re Adoption of T.M.L.M.**, --- A.3d ---, 2018 Pa. Super. 87, (Pa. Super. Apr. 13, 2018). These precedents seemingly obligate us to raise *sua sponte* whether the

appointment of a guardian *ad litem* ("GAL") in a contested termination hearing satisfies the requirements of 23 Pa.C.S.A. § 2313(a).[4]

Those cases are distinguishable from this matter. In **K.J.H.**, the court appointed no one at all to represent the child. In **T.M.L.M.**, the court-appointed GAL did not adequately represent either the child's best interests or legal interests; in fact, the GAL did not meet or speak with the child at all.[5] 2018 Pa. Super. 87, at 3. Here, James Conville, Esq. represented both of these children since the case's inception, a considerable amount of time – for

---

[4] This provision provides:

> "The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents. The court may appoint counsel or a guardian *ad litem* to represent any child who has not reached the age of 18 years and is subject to any other proceeding under this part whenever it is in the best interests of the child. No attorney or law firm shall represent both the child and the adopting parent or parents."

23 Pa.C.S.A. § 2313(a)

[5] Our Supreme Court cites the Comment to Pa.R.J.C.P. 1154 in defining "best interests" and "legal interests":

> "Legal interests denotes that an attorney is to express the child's wishes to the court regardless of whether the attorney agrees with the child's recommendation. "Best interests" denotes that a guardian *ad litem* is to express what the guardian *ad litem* believes is best for the child's care, protection, safety, and wholesome physical and mental development regardless of whether the child agrees."

Pa.R.J.C.P. 1154 cmt.

five-year-old S.L.M.S. since she was approximately 18 months old, and for two-year-old B.G.L.S. since she was born.

Instantly, we recognize that B.G.L.S., at age 2, is too young to have divergent best interests and legal interests. Thus there can be no conflict. *See In re D.L.B.*, 166 A.3d 322 (Pa. Super. 2017) (interpreting *L.B.M.* and declining to remand for appointment of additional counsel for child who was presented by an attorney who advocated for child's non-conflicting best and legal interests). Regarding S.L.M.S., at age 5, we note that Attorney Conville did not make the court aware of any alleged conflict, nor did the parents. In the absence of any indication of this conflict, we are satisfied that there is none – especially given the child's young age and the length of Attorney Conville's representation. Consequently, it is clear from the record that we need not remand the matter to ascertain whether there is a conflict between S.L.M.S.'s best interests and legal interests.[6]

For the reasons we set forth above, we affirm the trial court's decision to terminate Father's rights of the children.

Decrees affirmed. Jurisdiction relinquished.

Judge Ott joins this Memorandum.

---

[6] While our Supreme Court, in a fractured opinion, held that courts must appoint counsel to represent the legal interests of any child involved in a contested involuntary termination proceeding pursuant to 23 Pa.C.S.A. § 2313(a), a majority of the justices agreed that a GAL may serve as a child's counsel, so long as the GAL's dual role does not create a conflict between the child's best interests and legal interests. *In Re Adoption of L.B.M.*, 161 A.3d 172, 180; 183-93 (Pa. 2017).

President Judge Gantman Concurs in the Result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/28/2018