J-S35032-18, J-S35033-18 & J-S35034-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: M.A.L., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: T.L., NATURAL MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 225 MDA 2018 |

Appeal from the Decree January 10, 2018
In the Court of Common Pleas of Luzerne County Orphans' Court at
No(s):  A-8489

| | | |
|---|---|---|
| IN THE INTEREST OF: J.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: T.L., NATURAL MOTHER | : | |
| | : | |
| | : | |
| | : | No. 230 MDA 2018 |

Appeal from the Decree January 10, 2018
In the Court of Common Pleas of Luzerne County Orphans' Court at
No(s):  A-8490

| | | |
|---|---|---|
| IN THE INTEREST OF: G.K.L., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: T.L., NATURAL MOTHER | : | |
| | : | |
| | : | |
| | : | No. 231 MDA 2018 |

Appeal from the Decree January 10, 2018
In the Court of Common Pleas of Luzerne County Orphans' Court at
No(s):  A-8488

J-S35032-18, J-S35033-18 & J-S35034-18

BEFORE: BENDER, P.J.E., PANELLA, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:                          **FILED JULY 16, 2018**

In these consolidated and related appeals, T.L. (Mother) appeals from the decrees that involuntarily terminated her parental rights to her two sons, J.D., born in June 2009, and M.L., born in October 2010, and her daughter, G.L., born in December 2013 (collectively, Children), pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511(a)(2), (5), (8) and (b).[1]  For the reasons that follow, we affirm.[2]

The relevant factual and procedural history of this case is as follows. Mother is the biological mother of Children.  On September 28, 2012, Mother contacted Luzerne County Children and Youth Services (the Agency), reporting "fears she was having of hurting the two boys based on their behavioral issues and her inability to deal with those behavioral issues."  N.T., 7/31/17, at 56-57.  Mother initially agreed to voluntarily place Children in the physical custody of the Agency.  Upon the conclusion of the voluntary placement period, however, the Agency sought and received a shelter care

_____

[1] This Court listed Mother's appeals challenging the termination of her parental rights to her three children consecutively for disposition.  For ease of analysis, however, we address them in this one memorandum.

[2] The orphans' court also terminated the parental rights of J.D.'s father, M.L.'s father, and G.L.'s father.  No father has filed an appeal, nor are they a party to the present appeal.

- 2 -

order transferring physical and legal custody of Children to the Agency. *Id.* at 57.

On October 27, 2016, the Agency filed a petition to terminate Mother's parental rights to Children and to change Children's permanency goal from reunification to adoption. Between June 1, 2017 and October 31, 2017, the orphans' court held several hearings on the petition.[3] On January 10, 2018, the orphans' court entered its decrees terminating Mother's parental rights to Children. Mother timely filed notices of appeal on January 31, 2018, along with concise statements of errors complained of on appeal.

On appeal, Mother raises the following issues for our review and determination:

1. WHETHER THE TRIAL COURT ERRED IN TERMINATING PARENTAL RIGHTS AND/OR ABUSED ITS DISCRETION AS TESTIMONY OFFERED DID NOT ESTABLISH BY CLEAR AND CONVINCING EVIDENCE THE REQUIREMENTS OF THE ADOPTION ACT OF 1980, October 15, P.L. 934, no. 163, 1, 23, Pa.C.S.A. Section 2511(a)(2)(5) and (8) IN THAT [MOTHER] HAS NOT CAUSED THE CHILD TO BE WITHOUT ESSENTIAL PARENTAL CARE, CONTROL, OR SUBSISTENCE NECESSARY BECAUSE SHE HAS ENGAGED IN COURT-ORDERED SERVICES

_____

[3] At the hearing, Children were represented by Paul Delaney, Esquire as both guardian *ad litem* and legal counsel. Prior to the commencement of the termination hearing, Attorney Delaney indicated on the record that he did not "perceive [any] conflict whatsoever with respect to any of the three minor children." N.T., 6/1/17, at 25-26. As such, the orphans' court in this case was not required to appoint legal counsel and a separate guardian *ad litem* for Children. *See In re D.L.B.*, 166 A.3d 322, 329 (Pa. Super. 2017) (declining to remand for appointment of additional counsel for a child represented by a guardian *ad litem*, a practicing attorney, because the child's best and legal interests were not in conflict).

THAT HAVE REMEDIED THE CIRCUMSTANCES THAT ORIGINALLY GAVE RISE TO THE CHILD'S PLACEMENT.

2. WHETHER THE TRIAL COURT ERRED IN TERMINATING PARENTAL RIGHTS AND/OR ABUSED ITS DISCRETION IN GIVING PRIMARY CONSIDERATION PURSUANT TO 23 Pa.C.S.A. SECTION 2511(b) TO THE DEVELOPMENTAL, PHYSICAL, AND EMOTIONAL NEEDS AND WELFARE OF THE CHILD BECAUSE IT HAS BEEN DEMONSTRATED BY TESTIMONY THAT THERE WAS INSUFFICIENT EVIDENTIARY SUPPORT FOR THE COURT'S DECISION TAT THE BEST INTERESTS OF THE MINOR CHILD WOULD BE SERVED BY TERMINATING [MOTHER'S] PARENTAL RIGHTS.

Mother's Brief at 3-4 (suggested answers omitted).

We begin our analysis with this Court's standard of review:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for

- 4 -

termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, the orphans' court terminated Mother's parental rights pursuant to Section 2511(a)(2), (5), (8) and (b). We need only agree with the court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004). Here, we analyze the court's decision to terminate under Section 2511(a)(2) and (b), which provides as follows:

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\* \* \*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of

- 5 -

environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

To satisfy the requirements of Section 2511(a)(2), the moving party must produce clear and convincing evidence that the following three conditions are met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. ***In re Adoption of M.E.P.***, 825 A.2d 1266, 1272 (Pa. Super. 2003); 23 Pa.C.S.A. § 2511(a)(2). The grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. ***In re A.L.D.***, 797 A.2d 326, 337 (Pa. Super. 2002).

Parents have an "affirmative duty" to work toward the return of their children. ***See In re Julissa O.***, 746 A.2d 1137, 1141 (Pa. Super. 2000) (citations omitted). "This 'affirmative duty,' at minimum, requires a showing by the parent of a willingness to cooperate . . . to obtain the rehabilitative

services necessary for the performance of parental duties and responsibilities." *Id.* (citation omitted).

In granting the Agency's petition for involuntary termination, the orphans' court found that Mother has been unable to remedy the conditions that initially resulted in Children's placement. Orphans' Court Opinion, 3/2/18, at 18. In particular, the orphans' court noted that credible testimony was presented at the termination hearing to establish by clear and convincing evidence that Mother continues to struggle with her alcohol addiction, mental health, and her parenting of Children. *Id.* at 6. The orphans' court held that Mother was "unable to provide the proper and essential care for her children that is necessary for their well-being," and concluded that involuntarily terminating Mother's parental rights was in Children's best interests. *Id.*

Mother argues that she has complied with the objectives put in place by the Agency. Mother's Brief at 32-33. Moreover, Mother asserts that the trial court erred when it "did not seem to give weight to the success that [Mother] has had, nor did it give consideration to the fact that [it] was [Mother's] idea to voluntary[ily] place her children with the Agency because she needed help." *Id.* at 35.

Our review of the record supports the orphans' court's decision. Following Children's adjudication, Mother was directed to complete the following objectives before Children would be returned to her care: undergo drug and alcohol treatment and comply with all recommendations, address

mental health concerns, and improve parenting skills. N.T., 7/31/17, at 57. These problems rendered Mother incapable of parenting Children at the time of their placement.

Although Mother attended several drug treatment programs, she has failed to achieve sobriety. Ryan Hogan, Mother's clinical supervisor at Wyoming Valley Alcohol and Drug Services, testified regarding Mother's participation in substance abuse treatment. In particular, Mr. Hogan testified that Mother initially engaged in substance abuse treatment in January 2013. N.T., 6/1/17, at 29. After relapsing in July 2014, Mother was referred to a higher level of care, which included partial hospitalization. *Id.* at 31. Mother successfully completed her substance abuse treatment in October 2014. *Id.* at 33.

Mother reported a relapse in her recovery in December 2014 and reengaged in substance abuse treatment. *Id.* at 33. Mother complied with all of the treatment recommendations and was successfully discharged from treatment in April 2015. *Id.* at 34. However, Mother relapsed again in September 2015. *Id.* Mother re-entered treatment, but was unsuccessfully discharged in January 2016 due to poor attendance and poor compliance with the treatment recommendation. *Id.* at 34-35. Mr. Hogan reported that Mother underwent another substance abuse evaluation in March 2016, but failed to enroll in treatment or comply with the facility recommendations. *Id.* at 36.

Mother was re-evaluated for treatment for a fifth time in October 2016. *Id.* at 37. Mr. Hogan testified that Mother completed the initial treatment program, but failed to comply with the relapse prevention. *Id.* Accordingly, Mother was discharged from counseling in January 2017. *Id.* at 38-39. Finally, Mr. Hogan reported that the day before the termination hearing, Mother was again re-evaluated for substance abuse treatment. *Id.* at 39. He testified that Mother has been recommended for partial hospitalization treatment based on her reported alcohol use. *Id.*

Paul Dorang, Mother's case manager through Intensive Family Reunification Services, testified that Mother attended visits with Children under the influence of alcohol. N.T., 6/1/17, at 65. Because of Mother's continued substance abuse, Mother's in-home visits with Children were suspended and visits were relocated to the Agency for supervision. *Id.* Mr. Dorang stated that Mother was under the influence of alcohol during "at least six" of the twenty-two sessions he supervised. *Id.* at 66.

Mother also failed to address the Agency's concerns regarding her mental health. Alicia Singer, the senior clinician with Community Counseling Services testified that since October 2012, Mother has participated in individual therapy and medication management. N.T., 6/1/17, at 84. Altogether, Mother had 106 scheduled appointments with Community Counseling Services – 43 therapy appointments and 63 medication management appointments. *Id.* Of the 43 therapy appointments, Ms. Singer

testified that Mother attended only 22 appointments, failed to appear for 12 appointments, and cancelled 8 appointments.[4]  ***Id.***  Ms. Singer also reported that of the 63 medication management appointments, Mother only attended 29 appointments, failed to appear for 25 appointments, and cancelled 9 appointments.  ***Id.***  Ms. Singer testified that Mother's case was closed due to noncompliance in February 2016.  ***Id.***  Mother re-engaged in mental health treatment in September 2016, but her case was closed that same month after Mother failed to attend three consecutive appointments.  ***Id.*** at 85.

Finally, caseworker Cathy Sheridan testified that although Mother completed parenting classes, she failed to "utilize[e] the skills she was learning when she actually was with her children."  N.T., 6/1/17, at 120. Mother failed to demonstrate that she possessed the parenting skills necessary for the Agency to transition from supervised visits to unsupervised or overnight visits.  N.T., 7/31/17, at 63.

Based on the foregoing, the record confirms the orphans' court's determination that Mother is incapable of parenting Children, and that she cannot, or will not, remedy her parental incapacity.  In the five years prior to the termination hearing, Mother failed to comply with her mental health treatment and maintain sobriety for any appreciable amount of time.  Mother's failure to address these concerns, and the danger they pose to Children, is

---

[4] One appointment was cancelled by the therapist.

compelling. As this Court has stated, "a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claim of progress and hope for the future." ***In re Adoption of R.J.S.***, 901 A.2d 502, 513 (Pa. Super. 2006). We therefore find no error or abuse of discretion in the orphans' court's decision to terminate Mother's parental rights to Children pursuant to 23 Pa.C.S.A. § 2511(a)(2).

We next consider whether the orphans' court abused its discretion by terminating Mother's parental rights pursuant to Section 2511(b).

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
>> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011)) (quotation marks and citations omitted).

The orphans' court concluded that it was in Children's best interests to terminate Mother's parental rights and allow Foster Parents to adopt them. Specifically, the orphans' court stated:

> This court finds that the Mother cannot offer to her children the basic physical, developmental and emotional needs that her children require and should have throughout their future life. Mother has been given ample time to address and remedy her problems, but has failed to successfully do so. The [c]ourt finds that she is not able to meet her children's needs. In stark contrast, the foster parents have amply demonstrated they meet the physical, developmental and emotional needs of the minor children, G.L., M.L., and J.D., and they have thrived under their care. The children need consistency and deserve a permanent home with loving capable parents.

Orphans' Court Opinion, 3/2/18, at 29.

Although Mother has expressed her desire to raise Children, she has not been able to meet the essential needs of Children. Notably, Mother has not maintained sobriety, nor demonstrated an ability to utilize proper parenting skills. Likewise, Mother has failed to comply with her mental health treatment throughout Children's entire dependency.

Additionally, Sara Caster, Mother's case manager at Family Care, testified that J.D. and M.L. have resided with Foster Parents since September 2012, and G.L. began residing with Foster Parents in December 2013, shortly after she was born. N.T., 10/3/17, at 22-23. Ms. Caster explained that

Children have adjusted well to living with their foster parents. Foster Parents provide Children with a home, meet their needs, maintain much-needed stability, and provide a parent-child relationship. *Id.* at 26-27. Children have bonded with Foster Parents, sometimes referring to them as "mom" and "dad." *Id.* at 27. Ms. Caster further testified that Children separate easily from Mother at the conclusion of visits and that terminating Mother's parental rights would not cause Children any irreparable harm. *Id.* at 30-31.

Although Mother's love for Children is not in question, along with her desire for the opportunity to parent Children, a parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights. *See In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010). A child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *In re Z.S.W.*, 946 A.2d at 732. Rather, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d at 856. In sum, because the orphans' court's findings are supported by the record and free of legal error, we affirm the orphans' court's termination of Mother's parental rights. *See T.S.M.*, 71 A.3d at 267.

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/16/2018