J-S05034-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: Q.A.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.D., NATURAL FATHER | : | No. 1626 MDA 2019 |

Appeal from the Decree Entered September 11, 2019
in the Court of Common Pleas of Luzerne County
Orphans' Court at No(s):  A-8768

BEFORE:  SHOGAN, J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                **FILED APRIL 09, 2020**

D.D. ("Father") appeals from the Decree granting the Petition filed by the Luzerne County Children and Youth Services ("CYS") to involuntarily terminate his parental rights to his biological son, Q.W. ("Child") (born in September 2006), with K.A.W. ("Mother"), pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511(a)(2) and (b).  After careful review of the record, we affirm.

In its Opinion pursuant to Pa.R.A.P. 1925(a), the trial court set forth the factual background and procedural history of this appeal as follows:

On September 7, 2018, [CYS] filed Petitions for the Involuntary Termination of Parental Rights as to [Child]. After multiple delays, the court received evidence on April 25, 2019[,] and on June 21, 2019. Subsequent to the last hearing, the parties and the Guardian *Ad Litem* [("GAL")[1]] submitted to the Court Findings of Facts and Conclusions of Law on or around August 5, 2019. This Court then issued [D]ecrees terminating the parental rights of Mother and Father on September 9, 2019. Mother voluntarily relinquished her parental rights on April 25, 2019.[2] Father's parental rights were terminated pursuant to 23 Pa.C.S.A. § 2511(a)(2). In entering the termination [D]ecrees, the [c]ourt gave primary consideration to the developmental, physical, and emotional needs and welfare of [Child] pursuant to 23 Pa.C.S.A. § 2511(b). On October 3, 2019, Father, by and through his court[-]appointed counsel, filed a Notice of Appeal to [this] Court[,] and the requisite Concise Statement of Matters Complained of on Appeal.

Trial Court Opinion, 11/4/19, at 1-2 (footnotes added).

Following the hearings, the trial court issued the following findings of fact:

---

[1] We observe that the trial court appointed Maria Turetsky, Esquire ("Attorney Turetsky"), to represent Child's legal interests and to serve as Child's GAL. After being ordered to notify the trial court if she believed that there was a conflict in her representation of Child's legal interests and Child's best interests, Attorney Turetsky filed a written recommendation with the trial court, stating that the termination of Father's parental rights is in Child's best interests. Trial Court Opinion, 11/4/19, at 14. There does not appear to be a conflict between the Child's best interests and legal interests, and none of the parties challenge Child's representation by the GAL. *See In re D.L.B.*, 166 A.3d 322, 329 (Pa. Super. 2017) (stating that "separate representation would be required only if the child's best interests and legal interests were somehow in conflict.").

[2] Mother has not filed a brief in this appeal, nor has she filed an appeal from the termination of her parental rights to Child. We also note that, by Decree dated June 21, 2019, the trial court involuntarily terminated the parental rights of Child's legal father, F.A.D., pursuant to 23 Pa.C.S.A. § 2511(a)(1) and (b). F.A.D. has not filed a brief in this appeal, nor has he filed an appeal from the termination of his parental rights to Child.

There is one minor child in this case, [Child], born [in September 2006]. This case involves the proposed termination of Father's parental rights. It is unrebutted that [Child] has been in placement in foster care with his sibling [] since December 25, 2015. The reason for the placement was Mother's deplorable housing conditions and that Mother had an outstanding warrant for her arrest. At the time of placement, Father was residing in Newark, [New Jersey,] with his wife and her five children. In meeting its requisite burden of proof by clear and convincing evidence regarding the termination of parental rights of Father, [CYS] offered testimony of Gabrielle Stelmak ["Stelmak"], caseworker for [CYS]. Father testified on his own behalf.

*Id.* at 2 (paragraphs combined, citations to record omitted).

On appeal, Father raises the following issues:

I. Whether the trial court abused its discretion, committed an error of law and/or there was insufficient, [*sic*] evidentiary support for its finding that [Father's] parental rights should be terminated pursuant to 23 Pa.C.S.A. [§] 2511(a)[?]

II. Whether the trial court abused its discretion, committed an error of law and/or there was insufficient evidentiary support for its finding pursuant to 23 Pa.C.S.A. [§] 2511(b) that it is in the best interest of the minor [C]hild to grant the termination of [Father's] parental rights[?]

Father's Brief at 3 (unnumbered).

Father argues that the trial court erred and/or abused its discretion in terminating his parental rights under section 2511(a)(2) of the Adoption Act. *Id.* at 6. Father contends that the trial court erred in finding that he did not make a significant effort to visit Child during the duration of Child's dependency, and that Father always made excuses for his lack of visits with Child, despite his being offered reimbursement from CYS for his cost of transportation and hotel stay. *Id.* Father also argues that the trial court erred

in finding that he never completed his court-ordered drug and alcohol treatment. *Id.* at 6-7. Father asserts that the trial court erred in finding that he is not capable of providing essential care and control for Child, and is unable to meet Child's needs. *Id.* at 8.

In reviewing an appeal from a decree terminating parental rights, we adhere to the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.

> [U]nlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012) (internal citations omitted).

The burden is upon the petitioner to prove, by clear and convincing evidence, that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). Moreover, we have explained, "[t]he standard of clear and convincing evidence is defined as testimony that is so 'clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.'" *Id.* (quoting *In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)). This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a), along with consideration of section 2511(b). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004).

Here, the trial court terminated Father's parental rights under section 2511(a)(2) and (b), which provide as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

* * *

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

* * *

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. …

23 Pa.C.S.A. § 2511(a)(2), (b).

To satisfy the requirements of section 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. *See In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003). The grounds for termination of parental rights under section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002).

Based on Stelmak's testimony, which the trial court found to be credible, the trial court concluded that CYS had shown, by clear and convincing evidence, that the parental rights of Father to Child should be terminated pursuant to 23 Pa.C.S.A. § 2511(a)(2). Trial Court Opinion, 11/4/19, at 2-3. With regard to section 2511(a)(2), the trial court stated as follows:

[Child] has been in placement in foster care with his [half-]sibling, T.K.[,] since December 25, 2015. The reason for the placement was Mother's deplorable housing conditions and that Mother had an outstanding warrant for her arrest. At the time of placement, Father was residing in Newark, [New Jersey,] with his wife and her five children.

* * *

... Credible testimony was presented to show by clear and convincing evidence that Father has refused or was not capable in making a diligent effort to assume any parental responsibilities for [C]hild and[,] as of the date of the hearing, Father had not remedied these issues.

* * *

Unlike 23 Pa.C.S.A. § 2511(a)(1), subsection (a)(2) does not emphasize a parent's refusal or failure to perform parental duties, but[,] instead[,] emphasizes the child's present and future need for essential parental care, control or subsistence necessary for his physical or mental well-being. Therefore, the language in subsection (a)(2) should not be read to compel courts to ignore a child's need for a stable home and ... this is particularly so where disruption of the family has already occurred and there is no reasonable prospect for reuniting it.

At this juncture, [Child's] right to have proper parenting in fulfillment of [his] potential in a permanent, healthy, safe environment outweighs Father's interest.

*Id.* at 2-4, 9 (internal quotations, emphasis, and citations omitted).

After hearing testimony from Stelmak and Father, the trial court rejected the testimony of Father as not credible. We conclude that there is competent evidence in the record that supports the trial court's findings and credibility determinations. We thus discern no abuse of the trial court's discretion in finding that Father's parental rights should be terminated under section 2511(a)(2). *In re Adoption of S.P.*, 47 A.3d at 826-27.

Next, Father argues that the trial court abused its discretion in finding that termination of Father's parental rights was in Child's best interest pursuant to section 2511(b). Father's Brief at 9. Father asserts that Stelmak's testimony that Father and Child have merely a friend-like bond, rather than a bond between a parent and child, was incorrect. *Id.* On the contrary, Father argues that he and Child actually talk about topics such as going to the park, movies, and seeing Child's grandmother, and he claims that he would call Child twice a week were he not working in his current job. *Id.* at 9-10.

We have explained that the focus in terminating parental rights under section 2511(a) is on the parent, but it is on the child pursuant to section 2511(b). *See In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa. Super. 2008). In reviewing the evidence in support of termination under section 2511(b), our Supreme Court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The emotional needs and welfare of the child have been properly interpreted to include [i]ntangibles such as love, comfort, security, and stability. [T]his Court [has] held that the determination of the child's needs and welfare requires consideration of the emotional bonds between the parent and child. The utmost attention should be paid to discerning the effect on the child of permanently severing the parental bond.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (internal citations and quotations omitted).

When evaluating a parental bond, the court is not required to use expert testimony. Additionally, section 2511(b) does not require a formal bonding

evaluation. *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010) (internal citations omitted). Although it is often wise to have a bonding evaluation and make it part of the certified record, "[t]here are some instances ... where direct observation of the interaction between the parent and the child is not necessary and may even be detrimental to the child." *In re K.Z.S.*, 946 A.2d 753, 762 (Pa. Super. 2008).

This Court has explained that a parent's own feelings of love and affection for a child, alone, do not prevent termination of parental rights. *In re Z.P.*, 994 A.2d at 1121. Further, this Court has stated: "[A] parent's basic constitutional right to the custody and rearing of his or her child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *In re B.,N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004) (internal citations omitted). It is well-settled that "we will not toll the well-being and permanency of [a child] indefinitely." *In re Adoption of C.L.G.*, 956 A.2d at 1007 (citing *In re Z.S.W.*, 946 A.2d 726, 732 (Pa. Super. 2008) (noting that a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting.")).

With regards to this claim, the trial court reasoned as follows:

[CYS] presented credible testimony regarding the needs, welfare and best interest of [Child] in relation to [] Father.

[Stelmak] testified that [Child] is placed with his [half-]brother, T.K.[,] in a foster home. The home consists of the foster mother, her three adult sons and her fourteen[-]year[-]old adopted son.

[Stelmak] testified that [Child] has assimilated into the foster home. She testified that she visits the home on a monthly basis. The foster mother has photos of [Child] and his brother in the home and their school projects displayed in the home. There are also toys in the home. [Stelmak] further stated that [Child] has a close relationship with his brothers in the residence.

[Stelmak] testified that the foster mother meets the physical needs of [Child]. She provides him with shelter, food and clothing. She also meets the developmental needs of [Child]. [Stelmak] stated that at each of the home visits, the foster mother related to her concerns she has about [Child]. The foster mother also ensures that [Child] attends his counseling sessions. The foster mother also is in constant contact with personnel at [Child's] school. [Stelmak] further testified that the foster mother meets the emotional needs of the child. If [Child] is upset[,] then she is upset. If [Child] is happy, then she is happy. In addition, the foster mother always advocates for [C]hild as to what she believes to be in his best interest.

[Stelmak] described the bond between Father and [Child] as a bond between two (2) friends. [Stelmak] testified that there had been only four (4) supervised visits between Father and [Child] as of the time of the last date of hearings. [Stelmak] stated that she did not believe that there is a strong parent/child bond between Father and [Child]. She stated that Father only called [Child] once per month to speak to him. It was not until the first hearing addressing the termination of Father's parental rights that Father began to call [Child] once per week. [Stelmak] stated that [Child] is happy in the foster home and wants to be adopted by the foster mother. She further indicated that there is a strong bond between him and his natural [half-]brother. [Stelmak] also indicated that there is a strong bond between [Child] and the foster mother. She described the bond between [Child] and the foster mother as a parent/child bond.

[Stelmak] stated that should the [trial court] grant the termination of Father's parental rights, there would not be any detrimental effect on [Child], but rather a positive effect. She

- 10 -

explained that [Child] would be able to achieve permanency. [Stelmak] further explained that the foster mother is aware that once she adopts [Child], she would have an obligation to support [Child] financially, physically, educationally and emotionally. The foster mother further understood that [Child] would be able to inherit from her as if he were her natural born child. [Stelmak] further testified that [Child] had told her many times that he wished to be adopted by the foster mother.

Trial Court Opinion, 11/4/19, at 11-13 (citations to record omitted).

Based on Stelmak's testimony, which the trial court found credible, the trial court concluded that CYS had shown by clear and convincing evidence that the termination of the parental rights of Father to Child best serves the needs and welfare of Child pursuant to 23 Pa.C.S.A. § 2511(b). Similarly, we reject Father's argument, and agree with the trial court that these friend-like discussions do not fall within the realm of parental relationship entailed by a parental bond. After a careful review of the record in this matter, we conclude that the record supports the trial court's factual findings and the court's conclusions are not the result of an error of law or an abuse of discretion with regard to section 2511(b). **In re Adoption of S.P.**, 47 A.3d at 826-27.

There was sufficient, competent evidence in the record for the trial court to find the grounds for termination of parental rights under section 2511(a)(2), due to parental incapacity that cannot be remedied. There was also sufficient, competent evidence in the record for the trial court to find that Child's best interests are served by his foster parents, and that no bond exists between Child and Father such that Child would suffer permanent emotional harm from the termination of Father's parental rights. We therefore affirm

- 11 -

the decree terminating Father's parental rights with regard to Child under section 2511(a)(2) and (b).

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/09/2020