J-S25031-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.K.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: E.R., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 943 EDA 2023 |

Appeal from the Decree Entered March 15, 2023
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000059-2022

| | | |
|---|---|---|
| IN THE INTEREST OF: J.A.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: E.R., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 944 EDA 2023 |

Appeal from the Decree Entered March 15, 2023
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000060-2022

| | | |
|---|---|---|
| IN THE INTEREST OF: J.L.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: E.R., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 945 EDA 2023 |

Appeal from the Decree Entered March 15, 2023
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000061-2022

| | | |
|---|---|---|
| IN THE INTEREST OF: A.K.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |

J-S25031-23

APPEAL OF: E.R., MOTHER

No. 946 EDA 2023

Appeal from the Decree Entered March 15, 2023
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000062-2022

BEFORE: NICHOLS, J., MURRAY, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.: **FILED SEPTEMBER 14, 2023**

E.R. ("Mother") appeals from the March 15, 2023, decrees involuntarily terminating her parental rights to her children, sons, J.K.R., born in June 2018, and J.A.R., born in December 2010, and daughters, J.L.R., born in July 2013, and A.L.R., born in November 2016 (collectively, "the Children"), pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b).[1] For the reasons below, we affirm.

We summarize the factual and procedural history as follows. The family came to the attention of the Philadelphia Department of Human Services ("DHS") in 2019 due to reports related to Mother's homelessness and substance abuse. **See** N.T. Termination H'rg, 3/15/23, at 14. Additionally, J.A.R., then 8 years old, was not enrolled in or regularly attending school.

---

[1] By separate decrees entered the same date, the trial court terminated the parental rights of the Children's putative father, I.M.A. ("Father"). Father did not file appeals from those decrees, nor has he participated in the instant appeals.

- 2 -

*See id.* DHS obtained protective custody of J.A.R. on May 9, 2019, and protective custody of the remaining three children the following day, May 10, 2019. *See id.* at 15-16. The Children have remained in DHS custody since that time. *See id.* at 16.

The court adjudicated the Children dependent on June 5, 2019, and established permanency goals of reunification[2] and ordered supervised visitation for Mother. *See* N.T., Termination H'rg, at 16; *see also* DHS Exhibit 4 (Dependency Dockets). In furtherance of reunification, DHS established a single case plan with objectives focused on, *inter alia*, supervised visitation, substance abuse, and mental health. *See* N.T., Termination H'rg, at 17.

Throughout the ensuing dependency proceedings, the court conducted permanency review hearings at regular intervals. The court characterized Mother's compliance with the permanency plan as substantial in December 2019 and February 2020; moderate in October 2020 and April 2021; minimal in September 2021; and moderate in March 2022. *See* DHS Exhibit 4 (Dependency Dockets). Significantly, Community Umbrella Agency ("CUA") caseworker, Zeferino Albino, testified that Mother was inconsistent in her compliance with the single case plan objectives and, as a result, not capable of caring for the Children. *See* N.T., Termination H'rg, at 27-28.

---

[2] The court established concurrent goals of adoption on March 4, 2022. *See* DHS Exhibit 4 (Dependency Dockets).

On January 27, 2022, DHS filed petitions for the termination of parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b), with respect to all four Children. Following numerous continuances, the trial court held a hearing on the petitions on March 15, 2023. Mother was present and represented by counsel.[3] The Children, then ages twelve, nine, six and four, were represented by both a guardian *ad litem* ("GAL") and legal counsel.[4] DHS presented the testimony of the CUA Caseworker Albino.[5, 6] Additionally, Mother testified on her own behalf.

By separate decrees dated and entered March 15, 2023, the trial court involuntarily terminated Mother's parental rights to the Children pursuant to

---

[3] We observe that Mother arrived late, after the proceeding had commenced. *See* N.T., Termination H'rg, at 10, 32.

[4] Both the GAL and legal counsel, also referred to as a child advocate, argued in favor of termination of Mother's parental rights. *See* N.T., Termination H'rg, at 86-90. While the GAL submitted a brief to this Court, legal counsel submitted a letter noting her agreement with the trial court and advising that she would not be filing a separate brief. *See* Letter, 6/22/23.

[5] During the subject proceeding the trial court incorporated unspecified court orders and single case plans from the Children's dependency records. *See* N.T., Termination H'rg, at 9. It is important to note that DHS did not introduce, and the trial court did not admit, the same as evidence. We remind DHS counsel and the trial court that termination and dependency proceedings are two separate, distinct proceedings "with their own docket numbers, records, and divisions within the Court of Common Pleas." *See Interest of S.S.*, 252 A.3d 681, 688 (Pa. Super. 2021).

[6] DHS also marked DHS Exhibits 1 through 5, which were admitted without objection. *See* N.T., Termination H'rg, at 7, 9, 23. While not identified with the markings indicated on the record, we note that copies are included with the certified record.

23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b). Thereafter, Mother timely filed notices of appeal, along with concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).[7] This Court consolidated Mother's appeals *sua sponte* on May 8, 2023.

On appeal, Mother raises the following issues for our review:

1. Where Mother undertook her family plan objectives, visited the Children, the trial court erred in its finding that [DHS] presented clear and convincing evidence to terminate parental rights under 23 Pa.C.S.[ ] Section 2511(a)(1).

2. Where the Child[ren were] placed because of Mother's alleged negligence, but Mother has taken steps to mediate those things, the trial court erred in finding that [DHS] presented clear and convincing evidence to terminate parental rights under [ ] Section 2511(a)(2).

3. Where Mother completed the counseling, parenting, anger management classes, [and] secured housing[ and] employment, the trial court erred in finding that [DHS] presented clear and convincing evidence to terminate parental rights under [ ] Section 2511(a)(8).

4. Where [DHS's] witness testified to a bond between Mother and the Children, and the trial court instead focused on the Children's bond with their foster parents, the trial court erred in finding a termination of Mother's rights best serve the needs and welfare of the Children.

5. Where Mother has been able to remedy the conditions that . . . led to the removal of the Children from her care and where there [has] been [a] failure of the services to adequately assist Mother

---

[7] On April 25, 2023, the trial court filed a Notice of Compliance with Rule of Appellate Procedure 1925(a), in which it relied upon its reasoning placed on the record at the termination hearing. **See** Trial Court's Notice of Compliance with Rule of Appellate Procedure 1925(a), 4/25/23, at 1-2 (unpaginated).

in the remedying the conditions, the trial court erred in a finding of termination of parental rights under [ ] Section 2511 (a)(5).

6. The trial court erred in its findings of fact and they were not supported by clear and convincing evidence.

Mother's Brief at 3-4.

We review involuntary termination orders for an abuse of discretion, which our Supreme Court has explained "is limited to a determination of whether the decree of the termination court is supported by competent evidence." *In re Adoption of C.M.*, 255 A.3d 343, 358 (Pa. 2021). When applying this standard, appellate courts must accept the trial court's findings of fact and credibility determinations if they are supported by the record. *See Interest of S.K.L.R.*, 256 A.3d 1108, 1123 (Pa. 2021). "Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion." *In re Adoption of L.A.K.*, 265 A.3d 580, 591 (Pa. 2021). An abuse of discretion in this context exists only upon "a demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id*.

The involuntary termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis. *See* 23 Pa.C.S. § 2511. The trial court must initially determine whether the conduct of the parent warrants termination under one of the eleven enumerated grounds set forth at Section 2511(a). *See In re Adoption of J.N.M.*, 177 A.3d 937, 942 (Pa. Super. 2018) (citation omitted). Only if the

court determines that the petitioner has established grounds for termination under Section 2511(a) does it then engage in assessing the petition under Section 2511(b), which focuses upon the child's needs and welfare. *See In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). To involuntarily terminate parental rights, the petitioner must satisfy both Section 2511(a) and (b) by clear and convincing evidence, which is evidence that is so "clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *C.M.*, 255 A.3d at 358 (citation & internal quotation marks omitted).

In the case *sub judice*, the trial court terminated Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b). On appeal, Mother has challenged the court's ruling under each subsection. *See* Mother's Brief at 3. However, we have long held that, in order to affirm a termination of parental rights, we need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Instantly, we will analyze the court's termination decrees pursuant to Section 2511(a)(2) and (b), which provide as follows:[8]

---

[8] Thus, we need not address Mother's first, third, and fourth claims which concern the propriety of termination pursuant to subsections 2511(a)(1), (5), and (8). *See* Mother's Brief at 3, 8-11, 13, 16-17.

(a) General rule.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

* * *

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

* * *

(b) Other considerations.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), (b).

With regard to termination of parental rights pursuant to Section 2511(a)(2), we have explained:

In order to terminate parental rights pursuant to 23 Pa.C.S.[ ] § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). Section 2511(a)(2) "emphasizes the child's present and future need

for essential parental care, control or subsistence necessary for his physical or mental well-being," especially "where disruption of the family has already occurred and there is no reasonable prospect for reuniting it." ***In re Z.P.***, 994 A.2d 1108, 1117 (Pa. Super. 2010) (citation & emphasis omitted).

Furthermore:

> The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties.

***In re D.L.B.***, 166 A.3d 322, 327 (Pa. Super. 2017) (citation omitted). Rather, "[p]arents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities." ***Matter of Adoption of M.A.B.***, 166 A.3d 434, 443 (Pa. Super. 2017) (citation omitted). As such, "[a] parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous." ***Z.P.***, 994 A.2d at 1118 (citation & quotation marks omitted).

On appeal, Mother argues that the trial court erred in finding clear and convincing evidence to support grounds for termination pursuant to Section 2511(a)(2). ***See*** Mother's Brief at 11. She asserts her capability of caring for the Children and implies that the court's ruling was based on her "[p]ast incapacity alone." ***Id.*** at 11-12. Mother maintains the conditions which "brought her children into care" have been resolved, and highlights her participation in mental health treatment, as well as obtaining housing and

employment. *See id.* at 12. She further challenges the suggestion that she is not capable of parenting the Children as speculative. She states: "Without the [C]hildren returning to Mother's care or her having unsupervised visits, opinions about Mother's inability to provide care are just suspicions based on Mother's prior history[.]" *Id.*

Upon our review, we conclude the record supports grounds for termination under Section 2511(a)(2). As indicated *supra*, Caseworker Albino testified that Mother was inconsistent in her compliance with her single case plan objectives, which emphasized, *inter alia*, supervised visitation, substance abuse, and mental health.[9] *See* N.T., Termination H'rg, at 17, 27. He confirmed that Mother was informed of these objectives, which remained substantially the same since their inception. *See id.* at 18-19.

Specifically, Caseworker Albino testified that Mother was inconsistent with visitation. *See* N.T., Termination H'rg, at 20. He noted that Mother had a period of unsupervised visitation which reverted back to supervised

---

[9] Mother's single case plan objectives additionally focused on housing and employment. *See* N.T., Termination H'rg, at 17-18. Caseworker Albino acknowledged that Mother had provided a copy of her lease, and that he had been inside of her home. *See id.* at 25, 60. His testimony regarding Mother's proof of employment, however, was unclear. Despite indicting that Mother did not provide proof of employment, Caseworker Albino later agreed that he "received copies of her paystubs" when she provided him with her lease. *See id.* at 25, 60.

visitation prior to the filing of the termination petitions.[10]  **See id.** at 41-42.

However, he explained that, following an incident at the September 22, 2022,

visit, Mother did not visit with the Children for a period of more than four

months — from September 22, 2022, until February 3, 2023.  **See id.** at 21-

23, 47.  Caseworker Albino emphasized that the visits were not suspended by

CUA; rather, Mother stopped visiting with the Children "on her own."  **Id.** at

21.  Moreover, he noted that prior to the March 15, 2023, termination hearing,

Mother had not visited with the Children since the last week of February.  **See**

**id.** at 20-21.

Further, despite some negative drug tests throughout the pendency of

the dependency matters,[11] Mother tested positive for cocaine on May 12,

2022, and positive for both marijuana and cocaine on July 15, 2022.  **See**

N.T., Termination H'rg, at 41, 60.  Additionally, Mother failed to comply with

requests for random screens.  Caseworker Albino testified that he requested

---

[10]  While the notes of testimony reference an unspecified period of unsupervised visitation in 2021, until Mother allegedly improperly kept J.K.R. overnight, the dependency dockets reveal court permission for unsupervised visitation from December 2019 until the court again ordered supervised visitation in September 2021.  **See** N.T., 3/15/23, at 41-42, 57; **see also** DHS Exhibit 4 (Dependency Dockets).

[11] Mother most recently tested negative for controlled substances in January 2023 following a court hearing.  **See** DHS Exhibit 5 (Urine Drug Testing Report, 1/4/23).

Mother go to the Clinical Evaluation Unit ("CEU")[12] for random screening twice a month, but Mother did not go. ***See id.*** at 23-24, 40. He stated: "She would not go. I would text her and inform her, can she provide a urine and she would say yes. And when I called CEU, they said she did not go." ***Id.*** at 24. Mother acknowledged that Mr. Albino sent her for random screens on "multiple" occasions, although she claimed she had missed "[j]ust" one random drug test in February of 2023. ***Id.*** at 68. Furthermore, notwithstanding the positive screens, she denied **any** substance abuse, claiming, "I don't get high at all, not even smoke cigarettes or drink." ***Id.*** at 75. Caseworker Albino stated that Mother never successfully completed drug and alcohol treatment and, therefore, he "wouldn't know" if she was still actively using drugs. ***Id.*** at 40-41.

With regard to mental health treatment, Caseworker Albino testified that Mother was discharged from therapy at The Wedge in July 2022 due to noncompliance. ***See*** N.T., Termination H'rg, at 24-26, 42, 59. Likewise, Mother failed to provide a mental health treatment plan to CUA as ordered.[13] ***See id.*** at 25-26. Mother's current mental health status therefore also remained unknown to DHS.

---

[12] It appears that this unit is now known as the Substance Analysis Unit. ***See id.***

[13] The court ordered Mother to provide an updated treatment plan and progress to CUA on multiple occasions. ***See*** DHS Exhibit 4 (Dependency Dockets); ***see also*** N.T., Termination H'rg, at 17-18.

Lastly, Caseworker Albino opined that Mother is not capable of caring for the Children. **See** N.T., Termination H'rg, at 27-28. He explained:

She struggles — during the visit, [M]other struggles to control the kids. The [C]hildren would — they treat her as if she's a friend, and she would interact and play with them in a playful manner, but when they begin to run around or try to leave the space where they're at, she would scream and yell at them.

It just illustrates that she does not have control of her children during her visits. . . .

***Id.***

Based on the foregoing, we discern no abuse of discretion by the trial court in concluding that termination pursuant to Section 2511(a)(2) is warranted. The record substantiates the conclusion that Mother's repeated and continued incapacity, neglect, or refusal has caused the Children to be without essential parental control or subsistence necessary for their physical and mental well-being. **See M.E.P.**, 825 A.2d at 1272. Moreover, Mother cannot or will not remedy this situation. **See id.** Mother's failure to comply with her objectives in furtherance of reunification related to visitation, substance abuse, and mental health caused the Children to be without essential parental control or subsistence necessary for their physical and mental well-being. Critically, her lack of compliance left the current status of her substance abuse and mental health conditions unknown to CUA. Further, her testimony belies any suggestion of future compliance and progress. As this Court has stated: "[A] child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting

responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." *In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa. Super. 2006).

Having found sufficient grounds for termination pursuant to Section 2511(a)(2), we next must determine whether termination was proper under Section 2511(b), which affords primary consideration to the developmental, physical and emotional needs and welfare of the child. *See T.S.M.*, 71 A.3d at 267. "[T]he determination of the child's 'needs and welfare' requires consideration of the emotional bonds between the parent and child. The 'utmost attention' should be paid to discerning the effect on the child of permanently severing the parental bond." *Id.* (citations omitted). As our Supreme Court recently explained in *Interest of K.T.*, 296 A.3d 1085 (Pa. 2023):

> [A] court conducting the Section 2511(b) needs and welfare analysis **must consider more than proof of an adverse or detrimental impact** from severance of the parental bond. We emphasize analysis of the parental bond is but one part of the overall subsection (b) analysis, which includes a determination of whether the bond is necessary and beneficial to the child, *i.e.*, whether maintaining the bond serves the child's developmental, physical, and emotional needs and welfare.

*Id.* at 1113 (emphasis added).

In addition, the *K.T.* Court held that the "Section 2511(b) inquiry must also include consideration of other important factors." *K.T.*, 296 A.3d at 1118. While not inventing an exhaustive list of considerations, the Court explained

- 14 -

that the inquiry **must consider and weigh** certain evidence **if it is present in the record**, including, but not limited, "the child's need for permanency and the length of time in foster care . . .; whether the child is in a preadoptive home and bonded with foster parents; and whether the foster home meets the child's developmental, physical, and emotional needs, including intangible needs of love, comfort, security, safety, and stability." *Id*. (footnote omitted); *see also id.* at n.28.

In concluding that termination of Mother's parental rights best serves the Children's developmental, physical, and emotional needs and welfare pursuant to Section 2511(b), the trial court stated:

> The testimony reflects that Mother struggles to control the Children and that they treat her like a friend. She's a visitation resource is my finding through the testimony. While they enjoy visits with Mother, they don't look to her as a disciplinarian.
>
> I find that there may well be a bond that exists, but I don't find that a termination would destroy an existing, necessary and beneficial relationship.
>
> It's unfortunate that visits have not progressed from supervised at the agency. I believe that the Children may well look forward to seeing mom, but it's as a friendly relationship as opposed to a parent/child.
>
> Children similarly or actually more than similarly have a bond with their foster parents. Three of the children are placed together, and the foster parents are meeting their needs.
>
> *     *     *
>
> I find the Children would not suffer irreparable harm if parental rights are terminated. The Children have expressed that they want to stay where they are. These children need permanency.

N.T., Termination H'rg, at 94-96 (internal capitalization corrected).

Mother, however, argues that the trial court dismissed and diminished her bond with the Children and failed to consider the impact of termination, as follows:

> Although the trial court references the needs and welfare of the [C]hildren, it failed to adequately consider the [C]hildren's bond with their Mother. There was no testimony on the record of the fact that termination of Mother's rights would have on the [C]hildren. The court first discusses the [C]hildren's reported bond with their foster family, but not with Mother. The [t]rial [c]ourt then minimizes the strength of the [C]hildren's bond with their Mother by stating that the [C]hildren called her by a nickname. In fact, the [C]hildren call her "M&M." The fact that her [C]hildren call her a name other than mom or mother does not indicate[ ] that there isn't a significant bond. To the contrary, the fact that the [C]hildren have a loving nickname for their Mother shows that there is a significant bond. Mother testified credibly that the [C]hildren want to return with her.

> The CUA worker criticized Mother's ability to discipline the [C]hildren during the supervised visits and [c]ites this as an indicator that she does not have a parental bond with her [C]hildren. Mother applied an approach during visits that would minimize the emotional temperature of the visits. The idea that Mother did not spend the visits actively disciplining the [C]hildren, but rather chose to engage with them by other means is not an indicator that she does not have a significant bond with her [C]hildren.

> The trial court erred in finding that the [C]hildren did not have a significant bond with their [M]other as it was not based on clear and convincing evidence.

Mother's Brief at 15-16.

Upon review, we discern no abuse of discretion. The record supports the finding that the Children's developmental, physical, and emotional needs and welfare favor termination of parental rights pursuant to Section 2511(b). *See T.S.M.*, 71 A.3d at 267.

As noted ***supra***, while Mother's visitation progressed to unsupervised visits for a period of time, her visitation later reverted back to supervised visits. ***See*** N.T., Termination H'rg, at 41-42; ***see also*** DHS Exhibit 4 (Dependency Dockets). Moreover, Mother did not engage in **any** visitation with the Children for a period of more than four months, from September 22, 2022, until February 3, 2023.[14] N.T., Termination H'rg, at 21-23, 47. Caseworker Albino testified that the Children had "issues at home" as a result of Mother's "stopping and beginning again" visitation, and that J.A.R., in particular "was struggling with anxiety thinking that the caregiver was going to leave him." ***Id.*** at 47-48. Additionally, he reported that prior to the March 15, 2023, termination hearing, Mother had not visited with the Children since the last week of February. ***See id.*** at 20-21. Therefore, although Caseworker Albino testified that the Children "look forward" to and "enjoy" seeing Mother, he characterized their relationship with her as more of a friend. ***See id.*** at 27-28, 32 ("The [C]hildren . . . treat her as if she's a friend[.]"). Further, as stated above, he expressed that Mother "struggles to control" the Children, and they do not view her as a disciplinarian. ***Id.*** at 27-28.

Caseworker Albino also confirmed that the Children are doing well in their current foster care placements. He testified that they are bonded to their

---

[14] Caseworker Albino described a visit on September 22, 2022, where Mother was "screaming and yelling" at the staff, which led to the visit being halted and the Children being removed. N.T., Termination H'rg, at 22. He further expressed that the Children were "scared and fearful with her behavior." ***Id.***

respective foster parents who meet their needs and to whom they look for "love, protection, and support." N.T., Termination H'rg, at 33-36, 47. The three oldest children, ages twelve, nine, and six at the time of the subject hearing, have been placed together since October 2022. *See id.* at 34. Caseworker Albino attested that the placement is a pre-adoptive placement for J.A.R., who has been in the home since his initial placement in May of 2019, and that the foster mother is considering adopting J.L.R. and A.K.R., who were placed with her in October of 2022. *See id.* at 34, 36 ("[The foster mother] did say that she was open to adopting [J.A.R.] I mean the girls just got there; so, she said she's been thinking about it."). The three were enrolled in private school and receiving additional tutoring, as needed. *See id.* at 37-38, 51. Caseworker Albino further testified that J.K.R., then age four, was placed in a separate pre-adoptive home. *See id.* at 36. He confirmed that J.K.R. was "bonded" with his foster mother, and the two had a "good relationship[.]" *Id.* at 36. Caseworker Albino stated that J.K.R. refers to Mother by her name[15] and calls his foster mother mom. *Id.* at 46, 62. At the time of the hearing, J.K.R. was in preschool and successfully discharged from early intervention services. *See id.* at 39, 51.

Caseworker Albino testified that the Children want to remain as placed. *See id.* at 37, 43-45, 47-49, 61. As such, he opined that the Children will not

---

[15] Mr. Albino testified that J.K.R. refers to Mother by shortened versions of her first name. *See id.* at 46, 62.

suffer irreparable harm if parental rights are terminated. *See id.* at 36-37. He further expressed that it is in the best interests of the Children to be freed for adoption. *See id.* at 37. Accordingly, we conclude the trial court did not abuse its discretion in concluding that termination best serves the Children's developmental, physical, and emotional needs and welfare pursuant to Section 2511(b).

While Mother may profess to love the Children, a parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights. *See In re Z.P.*, 994 A.2d at 1121. The Children had been in placement for 46 months at the time of the subject hearing and are entitled to permanency and stability. As we have stated, "a child's life simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *In re Z.S.W.*, 946 A.2d 726, 732 (Pa. Super. 2008). Rather, "a parent's basic constitutional right to the custody and rearing of his or her child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004) (citation omitted). Accordingly, we conclude the trial court did not abuse its discretion when it terminated Mother's parental rights pursuant to Section 2511(a)(2) and (b).

In her final claim, Mother generally asserts the trial court failed to consider the evidence presented "under the 'clear and convincing' standard[.]" Mother's Brief at 18. She insists that Caseworker Albino's testimony was

"ambivalent, contradictory, and unreliable hearsay testimony." *Id.* In particular, she challenges his testimony regarding her discharge from mental health treatment — which was based on his conversations with her therapist and not her medical records — and his claim that she did not provide proof of income, despite his later acknowledgment that she gave him her paystubs. *See id.* at 18-19.

Preliminarily, we note that Mother's challenge to purported hearsay testimony is waived. She did not include a hearsay claim in her Pa.R.A.P. 1925(a)(2)(i) concise statement, and a challenge to hearsay testimony is not a "subsidiary issue" of any of her other claims. *See* Mother's Statement of Matters Complained of on Appeal, 4/14/23, at 1-2(unpaginated). *See also* Pa.R.A.P. 1925(b)(4)(v) ("Each error identified in the Statement will be deemed to include every subsidiary issue that was raised in the trial court[.]"), (vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.").

With regard to her assertion that the court's findings of fact are not supported by clear and convincing evidence, we could consider this claim to be a subsidiary of the other issues presented in her concise statement. *See* Pa.R.A.P. 1925(b)(4)(v). In each issue, Mother asserted DHS did not prove it met the statutory requirement for termination by "clear and convincing evidence." *See* Mother's Statement of Matters Complained of on Appeal at 1-2 (unpaginated). Regardless, we conclude she is entitled to no relief. Mother's argument simply asks this Court to reweigh the evidence and make our own

credibility determinations, which we are not permitted to do. *See **S.K.L.R.***,

256 A.3d at 1123. As our Supreme Court has explained, when considering a

trial court's decision to terminate parental rights,

> appellate courts . . . should defer to the trial judges who see and
> hear the parties and can determine the credibility to be placed on
> each witness and, premised thereon, gauge the likelihood of the
> success of the current permanency plan[. Moreover, e]ven if an
> appellate court would have made a different conclusion based on
> the cold record, we are not in a position to reweigh the evidence
> and the credibility determinations of the trial court.

***Id.*** at 1124 (citation & quotation marks omitted). Thus, Mother's final claim

also warrants no relief.

Because we conclude the trial court did not err or abuse its discretion

when it terminated Mother's parental rights pursuant to Section 2511(a)(2)

and (b), we affirm the termination decrees.

Decrees affirmed.


*Judgment Entered.*

_____
*Joseph D. Seletyn, Esq.*
*Prothonotary*



*Date: 9/14/2023*